UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEMOND CYCLING, INC.,

        Plaintiff,

v.

TREK BICYCLE CORPORATION,

        Defendant.

Case No. 08-CV-1010 (RHK/JSM)


**TREK BICYCLE
CORPORATION'S ANSWER AND
AFFIRMATIVE DEFENSES TO
COMPLAINT**


Defendant Trek Bicycle Corporation ("Trek"), by its attorneys Halleland
Lewis Nilan and Johnson, by Erik Salveson, Amanda M. Cialkowski, and
Benjamin J. Rolf and by Gass Weber Mullins LLC, by Ralph A. Weber,
Christopher P. Dombrowicki, and Kristal S. Stippich states as follows for its
Answer and Affirmative Defenses to Plaintiff's Complaint:

      1.      Admit.

      2.      Upon information and belief, admit.

      3.      Upon information and belief, admit.

      4.      Admit.

      5.      Admit.

      6.      Trek admits that the Sublicense Agreement states that LeMond'
name has "acquired a reputation for a high standard for quality." Trek denies the
allegations contained in paragraph 6 to the extent inconsistent with the foregoing

Dockets.Justia.com

and denies that it wanted to use the LeMond name for the purpose of effectively taking over and marketing the LeMond brand of bicycles and bicycle frames. Rather, Trek wanted to develop a line of Trek designed and manufactured bicycles that would be sold under the LeMond brand. Trek affirmatively alleges that the Sublicense Agreement and the 1999 First Amendment to the Sublicense Agreement impose obligations and responsibilities on both parties for the development and marketing of LeMond branded bicycles.

7.      Deny. Trek affirmatively alleges that in addition to Mr. LeMond's reputation, the LeMond brand developed world-wide recognition due to Trek's efforts in developing, promoting, marketing, manufacturing, and selling, the LeMond brand and LeMond branded products.

8.      Upon information and belief, admit.

9.      Deny.

10.     Deny.

11.     Trek admits Mr. LeMond has spoken publicly about performance enhancing drugs but lacks knowledge or information sufficient to form a belief as to the complete scope of Mr. LeMond's motivation for making his public statements. In fact, in November 2004, Mr. LeMond offered to "back away and adopt a completely private posture" and "withdraw from any public involvement in or communications about cycling whatsoever," in exchange for a payment from Trek of $10,000,000.

12.     Trek admits that cyclist deaths have been reported to be associated with the use of performance enhancing substances.  Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the specific number of deaths or the specific cause of death, and therefore denies the same.

13.     Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13, and therefore denies the same.

14.     Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14, and therefore denies the same.

15.     Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15, and therefore denies the same.

16.     Trek admits that Lance Armstrong has been successful as a cyclist and that having done so after recovering from cancer has been compelling to people around the world.  Trek lacks knowledge or information sufficient to form a belief as to the complaint's meaning of the term "veritable sports empire" and otherwise admits the allegations of paragraph 16, with the exception of the allegation that Trek has had a contractual relationship with Mr. Armstrong since

1998. Trek alleges that it has had a contractual relationship with Mr. Armstrong since 1999.

17.     Trek admits that is has never, neither prior to nor after the inception of its relationship with Mr. LeMond, suggested to Mr. LeMond that he should not speak publicly about problems with the use of performance enhancing drugs in cycling, only that LeMond should not publicly disparage specific athletes so as to damage the LeMond brand, Trek's business, and Trek's goodwill.

18.     Trek admits that it first spoke with Mr. LeMond regarding his disparaging comments when he publicly disparaged Lance Armstrong in 2001.

19.     Admit.

20.     Trek admits that Lance Armstrong has been tested numerous times and carefully scrutinized with respect to performance enhancing drugs but lacks knowledge or information sufficient to form a belief as to the reasons for such testing and scrutiny.

21.     Trek admits that there have been public reports contributing to the scrutiny of Mr. Armstrong. Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of those reports.

22.     Deny.

23.     Deny.

24.     Upon information and belief, admit.

25.     Upon information and belief, admit.

26.     Admit.

27.     Deny.  Trek affirmatively alleges that John Burke is the President of Trek.

28.     Paragraph 28 contains legal conclusions to which an answer is not required.  To the extent an answer is required, the allegations are denied.  This action arises under the Federal Declaratory Judgment Act and Wisconsin law applies.

29.     Paragraph 29 contains legal conclusions to which an answer is not required.  To the extent an answer is required, Trek admits that while venue is technically proper in the Federal District Court of Minnesota, the case should be transferred to the Federal District Court for the Western District of Wisconsin pursuant to Trek's Motion to Transfer.

30.     Paragraph 30 contains a jury demand to which an answer is not required.

31.     Trek admits the parties entered the sublicense agreement on June 29, 1995 but denies that the allegations contained in paragraph 31 fully and accurately describe the rationale for doing so.

32.     Admit.

33.     Admit.

34.     Admit.

35.     Answering paragraph 35, Trek admits that the language quoted in paragraph 35 appears in section 13.02.01 of the Agreement quoted in the complaint but denies that it is titled the "Moral-Turpitude Section."

36.     Answering paragraph 36, Trek admits that the language quoted in paragraph 36 appears in section 5.02 but denies that paragraph 36 quotes the section in full.

37.     Answering paragraph 37, Trek admits that the language quoted in paragraph 37 appears in section 5.01 but denies that paragraph 37 quotes the section in full.

38.     Admit.

39.     Admit.

40.     Admit.

41.     Admit.

42.     Admit.

43.     Admit.

44.     Deny.

45.     Trek admits that section 2.02.01 of the Sublicense Agreement contemplated up to thirty "Working Days" of appearances by Mr. LeMond which provision was amended by the 1999 First Amendment to ten "Working Days."

Trek admits the allegations contained in the second sentence of paragraph 45. Trek denies the allegations contained in the last sentence of paragraph 45.

46.     Admit.

47.     Trek admits the allegations contained in the first sentence of paragraph 47. Trek denies Mr. LeMond has performed in a professional and conscientious manner at all times during the term of the Agreement.

48.     Paragraph 48 contains legal conclusions to which an answer is not required. To the extent an answer is required, deny. The parties' relationship is governed by Wisconsin law.

49.     Deny. Trek incorporates paragraph 11 of this Answer.

50.     Trek admits that it was reported that Mr. LeMond made the first statement alleged in paragraph 50. Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the second statement alleged in paragraph 50.

51.     Trek admits that Lance Armstrong has been successful as a cyclist and that having done so after recovering from cancer has been compelling to people around the world. Trek lacks knowledge or information sufficient to form a belief as to the complaint's meaning of the term "veritable sports empire," but otherwise admits the allegations of paragraph 51.

52.     Trek admits that the quoted language contained in paragraph 52 appeared in public reports. Trek lacks knowledge or information sufficient to

form a belief as to the accuracy or completeness of those reports and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52, and therefore denies the same.

53.    Trek admits the existence of the public reports alleged in paragraph 53.  Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of those reports.

54.    Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54, and therefore denies the same.

55.    Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55, and therefore denies the same.

56.    Trek admits public reports existed concerning a professional relationship between Lance Armstrong and Dr. Ferrari.  Trek lacks knowledge or information sufficient to form a belief as to the accuracy or completeness of those reports.

57.    Trek admits that David Walsh, a sports journalist for the *Sunday Times of London*, co-authored *L.A. Confidentiel: Les Secrets de Lance Armstrong*.  Trek lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 57, and therefore denies the same.

58.     Trek admits that Mr. Lemond made the statements quoted and
referred to in paragraph 58, and that those statements were repeated in *L.A.
Confidentiel: Les Secrets de Lance Armstrong*.  Trek denies the allegations
contained in paragraph 58 to the extent inconsistent with the foregoing and
specifically denies the allegation that the statements made by Mr. LeMond were
unremarkable.  Trek affirmatively alleges that the disparaging statements made
by Mr. LeMond concerning specific athletes damaged the LeMond brand, Trek's
business, and Trek's goodwill.

59.     Admit.

60.     Trek admits that EPO is banned in professional cycling.  Trek
admits that there were public reports of statements made by Dr. Ferrari
comparing the relative risk of EPO to five or more liters of orange juice.  Trek
lacks knowledge or information sufficient to form a belief as to the completeness
or accuracy of those reports.

61.      Trek became aware of published reports associating Mr.
Armstrong and Dr. Ferrari in 2001.  Trek further alleges that in conversations
with Mr. Burke, Mr. LeMond disparaged Mr. Armstrong and his team with
innuendo.  Trek otherwise lacks knowledge or information sufficient to form a
belief as to the truth of the allegations contained in paragraph 61, and therefore
denies the same.  Trek incorporates by reference its answer to paragraphs 70-77.

62.     Trek admits that public reports were made concerning the allegations contained in paragraph 62.  Trek lacks knowledge or information sufficient to form a belief as to the accuracy or completeness of those reports.

63.     Trek admits that some former teammates of Lance Armstrong, such as the individuals identified in paragraph 63, tested positive for the use of performance enhancing drugs or have been found guilty and/or suspended for use of performance enhancing drugs.

64.     Trek admits that it was reported that one former teammate of Lance Armstrong admitted to the use of performance enhancing substances while preparing for the 1999 Tour de France.  Trek lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 64, and therefore denies the same.

65.     Trek admits the allegations contained in the first sentence of paragraph 65.  Trek lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65, and therefore denies the same.

66.     Trek admits that Mr. LeMond made the comment alleged in paragraph 66.  Trek lacks knowledge or information sufficient to form a belief as to the circumstances surrounding the comment, and therefore denies the allegations concerning those circumstances.  Trek denies that the comment was unremarkable.

67.    Trek admits that the quoted remarks were published.

68.    Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68, and therefore denies the same.

69.    Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69, and therefore denies the same.

70.    Admit.

71.    Trek admits that Mr. Burke, Trek's President, made a call in August 2001 in an attempt to mediate the dispute between Mr. LeMond and Mr. Armstrong, to try make peace between the parties, and to make Mr. LeMond understand that his disparaging statements were harmful to Trek and the LeMond brand, Trek's business, and Trek's goodwill.  Additional specifics of the conversation are not recalled and thus, Trek lacks knowledge or information concerning the remaining allegations contained in paragraph 71, and therefore denies the same.  Mr. LeMond has stated that he taped one or more of these conversations without Mr. Burke's knowledge or consent.

72.    Trek admits that Mr. Burke, Trek's President, made a call in August 2001 in an attempt to mediate the dispute between Mr. LeMond and Mr. Armstrong, to try make peace between the parties, and to make Mr. LeMond understand that his disparaging statements were harmful to Trek and the LeMond

brand, Trek's business, and Trek's goodwill. Additional specifics of the conversation are not recalled and thus, Trek lacks knowledge or information concerning the remaining allegations contained in paragraph 72, and therefore denies the same. Mr. LeMond has stated that he taped one or more of these conversations without Mr. Burke's knowledge or consent.

73. Trek admits that Mr. Burke, Trek's President, made a call in August 2001 in an attempt to mediate the dispute between Mr. LeMond and Mr. Armstrong, to try make peace between the parties, and to make Mr. LeMond understand that his disparaging statements were harmful to Trek and the LeMond brand, Trek's business, and Trek's goodwill. Additional specifics of the conversation are not recalled and thus, Trek lacks knowledge or information concerning the remaining allegations contained in paragraph 73, and therefore denies the same. Mr. LeMond has stated that he taped one or more of these conversations without Mr. Burke's knowledge or consent.

74. Trek admits that Mr. Burke, Trek's President, made a call in August 2001 in an attempt to mediate the dispute between Mr. LeMond and Mr. Armstrong, to try make peace between the parties, and to make Mr. LeMond understand that his disparaging statements were harmful to Trek and the LeMond brand, Trek's business, and Trek's goodwill. Additional specifics of the conversation are not recalled and thus, Trek lacks knowledge or information concerning the remaining allegations contained in paragraph 74, and therefore

denies the same. Mr. LeMond has stated that he taped one or more of these conversations without Mr. Burke's knowledge or consent.

75. Trek admits that Mr. Burke, Trek's President, made a call in August 2001 in an attempt to mediate the dispute between Mr. LeMond and Mr. Armstrong, to try make peace between the parties, and to make Mr. LeMond understand that his disparaging statements were harmful to Trek and the LeMond brand, Trek's business, and Trek's goodwill. Additional specifics of the conversation are not recalled and thus, Trek lacks knowledge or information concerning the remaining allegations contained in paragraph 75, and therefore denies the same. Mr. LeMond has stated that he taped one or more of these conversations without Mr. Burke's knowledge or consent.

76. Trek admits that Mr. Burke, Trek's President, made a call in August 2001 in an attempt to mediate the dispute between Mr. LeMond and Mr. Armstrong, to try make peace between the parties, and to make Mr. LeMond understand that his disparaging statements were harmful to Trek and the LeMond brand, Trek's business, and Trek's goodwill. Additional specifics of the conversation are not recalled and thus, Trek lacks knowledge or information concerning the remaining allegations contained in paragraph 76, and therefore denies the same. Mr. LeMond has stated that he taped one or more of these conversations without Mr. Burke's knowledge or consent.

77. Trek admits that Mr. Burke, Trek's President, made a call in August 2001 in an attempt to mediate the dispute between Mr. LeMond and Mr. Armstrong, to try make peace between the parties, and to make Mr. LeMond understand that his disparaging statements were harmful to Trek and the LeMond brand, Trek's business, and Trek's goodwill. Additional specifics of the conversation are not recalled and thus, Trek lacks knowledge or information concerning the remaining allegations contained in paragraph 77, and therefore denies the same. Mr. LeMond has stated that he taped one or more of these conversations without Mr. Burke's knowledge or consent.

78. Trek admits that Mr. LeMond made the statement alleged in paragraph 78, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 78, and therefore denies the same.

79. Trek admits that Mr. LeMond made the statement alleged in paragraph 78, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 79, and therefore denies the same.

80. Trek admits that Mr. LeMond made the statement alleged in paragraph 78, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 80, and therefore denies the same.

81.     Trek admits that Mr. LeMond's 2001 disparaging remarks received additional attention in the summer of 2004.  Trek otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 81, and therefore denies the same.

82.     Trek admits that Mr. LeMond made disparaging remarks in July 2004.  Trek lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 82, and therefore denies the same.

83.     Trek admits it received a large number of negative consumer comments and that it informed Mr. LeMond's attorney that this had occurred.  Trek denies all remaining allegations contained in paragraph 83.

84.     Admit.  Trek affirmatively alleges that the Notice of Breach relied on section 13.02.01 of the parties' agreement which is not identified as the "Moral-Turpitude Section."

85.     Trek alleges that in an attempt to protect the LeMond brand, Trek's business, and Trek's goodwill, Trek informed Mr. LeMond that his disparagement of specific athletes breached the Sublicense Agreement.  Trek denies the allegations contained in paragraph 85 to the extent inconsistent with the foregoing.

86.     Trek admits that the August 10, 2004, Notice of Breach contained these and other statements.

87.    Trek denies the allegations contained in the first two sentences of paragraph 87.  With respect to the allegations contained in the third sentence of paragraph 87, Trek admits that although LeMond's sales increased between fiscal years 2001 to 2002, and 2003 to 2004, they did not increase as much as they would have -- absent the damage done by Mr. LeMond -- given the extremely favorable market conditions and Trek's market position.

88.    Trek admits that it did not commence a lawsuit against LeMond in 2004 relating to his breaches but instead specifically reserved its right to take future legal action.  Trek denies all remaining allegations contained in paragraph 88.

89.    Trek alleges that it entered into a licensing agreement in 1995, believing that the goodwill associated with the LeMond name could assist it in efforts to design, market, and sell a line of road bicycles.  Mr. LeMond's public disparagement of specific athletes has harmed the LeMond brand, Trek's business, and Trek's goodwill.  Trek admits, upon information and belief, that Mr. LeMond was reported to have made the statements quoted in paragraph 89. Trek otherwise denies the allegations contained in paragraph 89.

90.    Admit.

91.    Trek admits that doping scandals damage sports like cycling, but otherwise lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations contained in paragraph 91, and therefore denies the same.

92.     Trek admits that doping scandals tarnish role models, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 92, and therefore denies the same.

93.     The allegations contained in paragraph 93 through 99 are unrelated to the parties' dispute, and thus, no response is required.  If a response were required, Trek admits the use of performance enhancing substances in baseball and track and field have been the subject of public reports.  Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of the allegations contained in paragraphs 93 through 99.

94.     The allegations contained in paragraph 93 through 99 are unrelated to the parties' dispute, and thus, no response is required.  If a response were required, Trek admits the use of performance enhancing substances in baseball and track and field have been the subject of public reports.  Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of the allegations contained in paragraphs 93 through 99.

95.     The allegations contained in paragraph 93 through 99 are unrelated to the parties' dispute, and thus, no response is required.  If a response were required, Trek admits the use of performance enhancing substances in baseball and track and field have been the subject of public reports.  Trek lacks

knowledge or information sufficient to form a belief as to the completeness or accuracy of the allegations contained in paragraphs 93 through 99.

96.     The allegations contained in paragraph 93 through 99 are unrelated to the parties' dispute, and thus, no response is required.  If a response were required, Trek admits the use of performance enhancing substances in baseball and track and field have been the subject of public reports.  Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of the allegations contained in paragraphs 93 through 99.

97.     The allegations contained in paragraph 93 through 99 are unrelated to the parties' dispute, and thus, no response is required.  If a response were required, Trek admits the use of performance enhancing substances in baseball and track and field have been the subject of public reports.  Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of the allegations contained in paragraphs 93 through 99.

98.     The allegations contained in paragraph 93 through 99 are unrelated to the parties' dispute, and thus, no response is required.  If a response were required, Trek admits the use of performance enhancing substances in baseball and track and field have been the subject of public reports.  Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of the allegations contained in paragraphs 93 through 99.

99.    The allegations contained in paragraph 93 through 99 are unrelated to the parties' dispute, and thus, no response is required.  If a response were required, Trek admits the use of performance enhancing substances in baseball and track and field have been the subject of public reports.  Trek lacks knowledge or information sufficient to form a belief as to the completeness or accuracy of the allegations contained in paragraphs 93 through 99.

100.    Deny.

101.    Trek admits that the article referred to in paragraph 101 contains the quotation included in the allegations but otherwise denies the allegations contained in paragraph 101.

102.    Trek alleges that in an attempt to protect the LeMond brand, Trek's business, and Trek's goodwill, Trek informed Mr. LeMond that his disparagement of specific athletes breached the Sublicense Agreement.  Trek denies the allegations contained in paragraph 102 to the extent inconsistent with the foregoing.

103.    Trek alleges that in an attempt to protect the LeMond brand, Trek's business, and Trek's goodwill, Trek informed Mr. LeMond that his disparagement of specific athletes breached the Sublicense Agreement.  Trek denies the allegations contained in paragraph 104 to the extent inconsistent with the foregoing.

104.    Deny.

105.   Trek alleges that Mr. LeMond's disparaging statements, whether or not they additionally constituted lies or defamation, damaged the LeMond brand, Trek's business, and Trek's goodwill.  Trek denies the allegations contained in paragraph 105 to the extent inconsistent with the foregoing.

106.   Trek admits that a statement that doping is bad for cycling cannot hurt cycling but affirmatively alleges that Mr. LeMond's disparaging statements regarding specific athletes damaged the LeMond brand, Trek's business, and Trek's goodwill.

107.   Trek lacks knowledge or information sufficient to form a belief as to the nature of the alleged comments and who delivered them, and therefore denies the same.

108.   Deny.  Trek incorporates by reference its answer to paragraph 11.

109.   Deny.

110.   Deny.

111.   Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111, and therefore denies the same.

112.   Trek admits that Mr. LeMond is still recognized in the countries identified as a result of his Tour de France wins and Trek's efforts to promote and sell the LeMond brand of bicycles.  Trek lacks knowledge or information

sufficient to form a belief as to the extent of his popularity and/or following as those terms are used in paragraph 112, and therefore denies the same.

113.    Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 113, and therefore denies the same.

114.    Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 114, and therefore denies the same.

115.    Trek admits there have been discussions from time to time throughout the relationship concerning opportunities and challenges for international sales of LeMond branded bicycles.  Sales varied greatly by country depending on local conditions.  Trek lacks knowledge or information sufficient to form a belief as to LeMond's negotiating intentions or objectives, and therefore denies the same.

116.    Trek denies that the allegations of paragraph 116 accurately describe Trek's obligations under the Sublicense Agreement and 1999 First Amendment.

117.    Trek admits the allegations contained in the first sentence of paragraph 117.  Trek denies all remaining allegations contained in paragraph 117.

118.    Deny.

119.  Deny.

120.  Deny.

121.  Deny.

122.  Trek admits that LeMond Cycling did not earn royalties beyond the minimum prior to 2007, but Trek nonetheless paid LeMond $100,000 in royalties for international sales for each of those years.

123.  Admit.

124.  Admit.

125.  Admit.

126.  Trek alleges that Mr. LeMond occasionally participated in the Trek 100 and otherwise admits the allegations contained in paragraph 126.

127.  Admit.

128.  Trek admits the dealer show in Madison, Wisconsin is one of Trek's largest marketing events.

129.  Admit.  Trek's request that Mr. LeMond not attend the 2006 dealer show came after Mr. LeMond disparaged Mr. Armstrong by saying, among other things, that Mr. Armstrong had threatened Mr. LeMond's life.  As a result of these public comments, on August 1, 2006 Mr. LeMond won the satirical "Just Shut Up" Award from a nationally syndicated ESPN radio show.  Trek believed it was in the best interest of the LeMond brand and Mr. LeMond that he not

attend the dealer show. Trek indicated to Mr. LeMond that his attendance would be necessary at other upcoming events.

130. Deny.

131. Trek admits the allegations contained in the first sentence. Trek denies the allegations contained in the second sentence of paragraph 131. Trek lacks knowledge or information sufficient to form a belief as to the allegations contained in the third sentence of paragraph 131, and therefore denies the same.

132. Trek admits that after discussing the event with Trek's Product Manager, Mr. LeMond was invited to attend and arrangements were made for his room and board. Trek lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 132, and therefore denies the same.

133. Trek denies that it was difficult to find the breakout session in which LeMond branded products were discussed and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 133, and therefore denies the same. Trek affirmatively alleges that LeMond branded products were prominently featured in the product display area.

134. Trek admits that Mr. LeMond spoke with a Trek Product Manager while standing in and near the prominent display area for LeMond branded products. Trek denies that the allegations of paragraph 134 fully and accurately describe that conversation and otherwise lacks knowledge or information to form

a belief as to the truth of the remaining allegations contained in paragraph 134, and therefore denies the same.

135.    Deny.

136.    Deny.

137.    Trek admits the allegations contained in the first sentence of paragraph 137.  Trek denies the allegations contained in the second sentence of paragraph 137.

138.    Deny.

139.    Deny.

140.    Trek admits that Mr. LeMond asked for cash in lieu of bicycles he was entitled to for his personal use but had not requested under the agreement. Trek admits that it declined to give him cash in lieu of the bicycles he was entitled to for his personal use but had not requested under the agreement.  Trek otherwise denies the allegations of paragraph 140.

141.    Admit.

142.    Admit.

143.    Admit.

144.    Trek admits that its representatives explained that Trek was put "in the middle." Trek denies the remaining allegations of paragraph 144.

145.    Trek lacks knowledge or information sufficient to form a belief as to any disparaging comment made by Mr. Armstrong, and therefore denies the same.  Trek denies the remaining allegations contained in paragraph 145.

146.    Deny.

147.    Deny.

148.    Trek alleges that its request that Mr. LeMond not attend the 2006 dealer show came after Mr. LeMond disparaged Mr. Armstrong by saying, among other things, that Mr. Armstrong had threatened Mr. LeMond's life.  As a result of these public comments, on August 1, 2006 Mr. LeMond won the satirical "Just Shut Up" Award from a nationally syndicated ESPN radio show.  Trek believed it was in the best interest of the LeMond brand and Mr. LeMond that he not attend.  Trek indicated to Mr. LeMond that his attendance would be necessary at other upcoming events.  Trek denies the allegations contained in paragraph 148 to the extent inconsistent with the foregoing.

149.    Deny.

150.    Trek admits the allegations contained in paragraph 150, except Trek alleges that two-years' prior notice was required if Trek was not going to exercise its option to renew the agreement, and thus, the informal notice was given ten-months early as an accommodation to Mr. LeMond.

151.    Trek lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 151, and therefore denies the same.

## COUNT ONE
### *Declaratory Judgment*

152.    Trek realleges and incorporates all prior admissions, denials, and affirmative allegations.

153.    Paragraph 153 contains legal conclusions to which an answer is not required.  To the extent an answer is required, admit.

154.    Paragraph 154 contains legal conclusions to which an answer is not required.  To the extent an answer is required, admit.

155.    Paragraph 155 contains a request for relief to which an answer is not required.  To the extent an answer is required, Trek denies that LeMond is entitled to a judgment declaring that LeMond Cycling has not breached the agreement.

156.    Paragraph 156 contains a request for relief to which an answer is not required.  To the extent an answer is required, Trek denies that LeMond is entitled to a judgment declaring that Trek breached the Agreement.

## COUNT TWO
### *Injunction*

157.    Trek realleges and incorporates all prior admissions, denials, and affirmative allegations.

158    Paragraph 158 contains a request for relief to which an answer is not required.  To the extent an answer is required, Trek denies that LeMond Cycling is entitled to the relief requested in paragraph 158.

### COUNT THREE
### *Breach of Contract*

159.    Trek realleges and incorporates all prior admissions, denials, and affirmative allegations.

160.    Deny.

161.    Deny.

162.    Deny.

## AFFIRMATIVE DEFENSES

1.  LeMond Cycling's complaint fails to state a claim upon which relief can be granted.

2.  LeMond Cycling's claims are barred as a result of LeMond Cycling and/or Mr. LeMond's actions.

3.  LeMond Cycling's claims are barred because LeMond Cycling materially breached the contract.

4.  LeMond Cycling's damages, if any, were caused in whole or in part by LeMond Cycling and/or Mr. LeMond and not by Trek.

5.  LeMond Cycling's claims are barred because Trek is entitled to terminate the contract.

6.  Some or all of LeMond Cycling's claims may be barred by the statute of limitations.

7.  LeMond Cycling may have failed to mitigate its damages, if any.

8.  LeMond Cycling failed to satisfy all necessary conditions precedent and/or subsequent for Trek's continued performance.

9.  Trek reserves its right to amend these affirmative defenses.

WHEREFORE Trek Bicycle Corporation respectfully requests that the Court enter judgment:

1.  Dismissing the Complaint with prejudice;

2.  Awarding Trek costs and attorneys fees; and

3.      For such other relief as the Court deems just and equitable.


Dated:  April 14, 2008                    HALLELAND LEWIS NILAN & JOHNSON, P.A.


By:    /s Benjamin J. Rolf
        Erik Salveson – Reg. No. 177969
        Amanda M. Cialkowski – Reg. No. 306514
        Benjamin J. Rolf – Reg. No. 386413
         600 U.S. Bank Plaza South
        220 South Sixth Street
        Minneapolis, MN 55402
        Telephone:  (612) 573-2970
        Fax:  (612) 338-7858


        OF COUNSEL

        Ralph A. Weber – WI Reg. No. 1001563
        Christopher P. Dombrowicki – WI Reg. No. 1041764
        Kristal S. Stippich – WI Reg. No. 1061028
        GASS WEBER MULLINS LLC
        309 North Water Street, Suite 700
        Milwaukee, WI  53202
        Telephone: (414) 223-3300
        Fax:        (414) 224-6116
        Email:weber@gasswebermullins.com
            dombrowicki@gasswebermullins.com
            stippich@gasswebermullins.com

        **ATTORNEYS FOR DEFENDANT**