LeMond Cycling, Inc. v. Trek Bicycle Corporation Doc. 15

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**LeMond Cycling, Inc.,**

**Plaintiff,**

**v.**

**Trek Bicycle Corporation,**

**Defendant.**

**Civil File No. 08-CV-01010 (RHK/JSM)**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**

On April 11, 2008, Defendant Trek Bicycle Corporation ("Trek") moved this Court for an order transferring this action to the United States District Court for the Western District of Wisconsin. For the reasons set forth below, Plaintiff LeMond Cycling, Inc. ("LeMond Cycling") respectfully requests that the Court deny Trek's motion.

## INTRODUCTION

On March 20, 2008, LeMond Cycling served Trek with a complaint venued in Hennepin County District Court ("the LeMond Complaint"). Under Minnesota law, therefore, LeMond Cycling commenced a lawsuit against Trek on March 20.[1] *See* Minn. R. Civ. P. 3.01. After explicitly requesting and securing additional time to consider the allegations before LeMond Cycling filed its complaint with the Hennepin County District Court, Trek proceeded to launch a forum-shopping effort when, on April 8, 2008, Trek

[1] LeMond Cycling intended to serve the LeMond Complaint earlier in the month, but held off out of respect for the unfortunate death of Richard Burke, the father of Trek's current president John Burke.

Dockets.Justia.com

filed a complaint ("Trek Complaint") seeking declaratory judgment in the United States District Court for the Western District of Wisconsin. Trek subsequently announced this filing in a prescheduled employee meeting to which it invited the press. Trek now requests that the LeMond Complaint be transferred to the Western District of Wisconsin. No basis exists for such a transfer.

## FACTS

### A. LeMond Cycling.

LeMond Cycling is a Minnesota Corporation with its principal place of business in Wayzata, Minnesota. LeMond Complaint at ¶ 25; Answer at ¶ 25. LeMond Cycling has been incorporated as a domestic corporation in the state of Minnesota since 1995. Declaration of Greg LeMond ("LeMond Dec.") at ¶ 1. The owners of LeMond Cycling, Greg and Kathy LeMond, have been Minnesota residents since 1987. *Id*.

### B. LeMond Cycling's Sublicense Agreement with Trek.

Since 1995, LeMond Cycling has sublicensed to Trek the use of the name and trademark "Greg LeMond Cycles" and other similar trademarks incorporating the name Greg LeMond (collectively referred to as "the LeMond brand"). LeMond Complaint at ¶ 31; Answer at ¶ 31. The LeMond brand has world-wide recognition due to Mr. LeMond's extensive bicycle racing in Europe and his three Tour de France victories. LeMond Complaint at ¶ 1; Answer at ¶ 1. The parties' contractual relationship is defined by the June 29, 1995 Sublicense Agreement ("Agreement") and an amendment that was executed in August of 1999 ("the 1999 Amendment"). LeMond Complaint at ¶ 5; Trek's Answer at ¶ 5. The Agreement explicitly identifies 60 countries, including

France, Spain, Holland, Austria, and Belgium, as "the Territory" for the Agreement. LeMond Complaint at ¶ 10; see also Paragraph 1.02 and Exhibit 1.02 of the Agreement (attached to Exhibit 1 of the Declaration of Erik T. Salveson). Neither the Agreement nor the 1999 Amendment contains either a choice-of-law or a forum-selection clause.

**C. LeMond commenced a lawsuit against Trek on March 20, 2008.**

On March 20, 2008, LeMond served Trek with the LeMond Complaint pursuant to Minn. R. Civ. P. 3.01. Def. Mem. at n.1; Exhibit 3 of the Declaration of Erik T. Salveson. The LeMond Complaint alleges, among other things, that Trek has failed to exert best efforts, as required by the Agreement and the 1999 Amendment, to promote the LeMond brand, both through distribution channels in North America and in countries explicitly identified as "the Territory" for the Agreement. LeMond Complaint at ¶¶ 9, 109-140. The LeMond Complaint also alleges, among other things, that Trek has not only taken actions with distributors all over the world that affirmatively harm the brand, but has also neglected to take necessary actions to protect the brand in a principled way when Greg LeMond, acting in his capacity as the namesake for LeMond Cycling, took a conscientious stance against the use of performance enhancing substances in professional cycling. LeMond Complaint at ¶¶ 110, 118, 120-125, 137, 145-146.

**D. Trek requests an extension in time to answer; LeMond Cycling agrees.**

One day after service of the LeMond Complaint, on March 21, 2008, Trek's counsel requested additional time to consider the allegations before LeMond Cycling filed the complaint and Trek would be required to respond. Declaration of Sidney D. Bluming ("Bluming Dec.") at ¶ 2. On March 31, 2008, LeMond Cycling agreed to allow

Trek until the end of April to consider the complaint before the LeMond Complaint would be filed or Trek would be required to answer. *Id*.

**E. Trek files its declaratory-judgment complaint on April 8, 2008, and LeMond files its already-commenced lawsuit with the Court on the same day.**

After no communication from Trek, on April 8, 2008, Trek filed a complaint in the United States District Court for the Western District of Wisconsin. Def. Mem. at 1. Trek announced this filing in a pre-announced employee meeting to which it invited the media. Rahne Dec. at ¶¶ 2-3. The Trek Complaint seeks two counts of declaratory relief and nothing more. Exhibit 1 of the Declaration of Erik T. Salveson at 12-16. In light of Trek's filing, which was in clear contradiction with its earlier request that LeMond Cycling withhold filing of the LeMond Complaint, LeMond Cycling filed its complaint in Hennepin County District Court on April 8. Def. Mem. at 1.

On April 9, Trek removed the LeMond Complaint to the United States District Court for the District of Minnesota and now requests that the LeMond Complaint be transferred to the Western District of Wisconsin. Trek's request is unsupported by either the facts or the law, specifically including the very cases Trek cites for its request for a transfer of the LeMond Complaint.

## ARGUMENT

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000). Transfer under section 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982),

*overruled on other grounds*, *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310-11(8th Cir. 1990); *Radisson Hotels Int'l v. Westin Hotel Co.*, 931 F. Supp. 638, 641 (D. Minn. 1996 (Kyle, J.)). "Rather, [as this Court has stated], the party seeking to transfer bears a 'heavy burden' of showing that 'the balance of factors *strongly* favors the movant.'" *Radisson Hotels*, 931 F. Supp. at 641 (emphasis in original; quoting *United Mortgage Corp. v. Plaza Mortgage Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994)); accord *Graff v. Qwest Communs. Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).

District courts consider the convenience of parties and witnesses and the interests of justice in determining whether to transfer a lawsuit pursuant to section 1404(a). *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). In considering these factors, the court must look to the particular circumstances of the case before it. *Id*.

Here, Trek has not met its "heavy burden" to compel the transfer of the LeMond Complaint to the Western District of Wisconsin. Trek's attempt to establish venue in the Western of District of Wisconsin fails in light of several facts, including:

(1) the fact that LeMond Cycling commenced the first lawsuit here more than two weeks before Trek filed its complaint;

(2) the fact that Trek's complaint only seeks declaratory relief and not damages;

(3) the fact that LeMond Cycling has been a Minnesota company for more than a decade, its principals have been domiciled here for

approximately 20 years, and there is no basis for disturbing LeMond Cycling's choice of forum; and

(4) the fact that the convenience of the parties favors neither party because the operative facts and related witnesses are spread well beyond Wisconsin and Minnesota—indeed, facts and witnesses relevant to this case can be found in the 60 countries that comprise "the Territory" as defined by the Agreement.

## I. Transfer is Both Disfavored and Unwarranted by the Present Circumstances.

Trek's request to transfer the LeMond Complaint to the Western District of Wisconsin relies almost wholly on a collection of inapposite cases and the claim that transfer will be more convenient for Trek. Trek's contention in this regard is misplaced.

### A. LeMond Cycling is a long-standing Minnesota company — its choice of forum should be given great weight.

For over a half-century, federal courts have held that unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should be left undisturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) ("A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.").

This Circuit (as well as this Court) recognizes this strong presumption in favor of plaintiff's choice of forum. *See, e.g.*, *Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft*, 495 F.3d 582, 588 n.3 (8th Cir. 2007) (stating "[t]he plaintiff has the choice of the initial forum," and stating that "courts use § 1404(a) as a

mere 'housekeeping measure' and transfer cases under that statute solely to promote litigation convenience and efficiency."); *EFCO Corp. v. Aluma Sys. USA, Inc.*, 268 F.3d 601 (8th Cir. 2001) (noting that plaintiff's choice of forum is entitled to deference); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994) ("Hosoya has reaped the benefits of its network of distributors, and it is only reasonable and just that it should now be held accountable in the forum of the plaintiff's choice (as long as that choice of forum comports with due process, which we believe it does).").

The strong presumption in favor of plaintiff's choice of forum exists in this Court as well. *Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981); *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 963 (D. Minn. 2006); *K-Tel Int'l, Inc. v. Tristar Prods.*, 169 F. Supp. 2d 1033, 1043 (D. Minn. 2001) (citing cases). This strong presumption in favor of the plaintiff's choice of forum is especially present where the plaintiff is a resident of the judicial district in which the suit is brought. *Imation Corp. v. Sterling Diagnostic Imaging*, No. 97-2475, 1998 U.S. Dist. LEXIS 16859 at *10-12 (D. Minn. Apr. 21, 1998) (attached to Rahne Dec. at ¶ 4, Ex. 3); *Pragmatic C Software Corp. v. Antrim Design Sys.*, No. 02-2595, 2003 U.S. Dist. LEXIS 1824 at *17 (D. Minn. Jan. 28, 2003) (attached to Rahne Dec. at ¶ 5, Ex. 4).

Consequently, requests to transfer based solely on shifts in inconvenience are insufficient in light of the well established presumption in favor of a plaintiff's choice of forum. *Facilitec Corp. v. Omni Containment Sys., L.L.C.*, No. 03-3187, 2003 U.S. Dist. LEXIS 13250 (D. Minn. July 31, 2003 (Kyle, J.)) (attached to Rahne Dec. at ¶ 6, Ex. 5). As this Court has acknowledged, when the plaintiff resides in the chosen forum and the

defendant resides in the proposed transferee forum, one party will unavoidably be inconvenienced whether or not the transfer is granted. *Caddy Prods. v. Am. Seating Co.*, No. 05-800, 2005 U.S. Dist. LEXIS 21871 at *5 (D. Minn. Sept. 28, 2005 (Kyle, J.)) (attached to Rahne Dec. at ¶ 7, Ex. 6). In such a case, the plaintiff's choice of forum will prevail because "the tie is awarded to the plaintiff." *Id*. (quoting *In re National Presto Indus. Inc*., 347 F.3d 662, 663-65 (7th Cir. 2003)).

Efforts to transfer an action from a resident plaintiff's choice of forum are more closely scrutinized when a defendant opts to file a declaratory-judgment action in a foreign jurisdiction.[2] Indeed, as the Eighth Circuit has noted, "'a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed . . . .'" *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995) (quoting *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993)). "Declaratory judgment actions may on occasion merit 'a closer look' to ensure that the declaratory plaintiff is not motivated by forum-shopping concerns." *BASF*, 50 F.3d at 558; *accord Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993). In *BASF*, for example, the Eighth Circuit held that where the chemical company raised chiefly an affirmative defense, and the granting of

---

[2] Of course, federal-district courts have discretion to refuse to adjudicate any declaratory-judgment action: "any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a) (emphasis added); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 288 (1995) (indicating that district courts are not obligated to assume jurisdiction of declaratory judgment actions and may stay or dismiss such claims in their discretion); *accord United States Fidelity and Guaranty Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 261 (8th Cir. 1994).

declaratory relief would deny the personal representative's legitimate choice of the forum and time for suit, no declaratory judgment should have been issued. *BASF*, 50 F.3d at 559.

Here, LeMond Cycling has been incorporated in the State of Minnesota for 13 years, and its principals, Greg and Kathy LeMond, have lived in the state for more than 20 years. Trek fails to provide any valid reason why this well-established resident's choice of forum should be disturbed. Instead, Trek relies on *Graff v. Qwest Communications Corp*., 33 F. Supp. 2d 1117 (D. Minn. 1999), but in doing so neglects to acknowledge the relevant particular circumstances of that case. In *Graff* the resident plaintiff's connection with Minnesota for purposes of the lawsuit was "tenuous at best" since it was based solely on the plaintiff's decision to live in Minnesota after the events giving rise to the lawsuit occurred. *Graff.*, 33 F. Supp. 2d at 1122-23. Moreover, in that case, the plaintiff *only* purchased a home in Minnesota approximately one week after he filed suit and *only* moved to Minnesota approximately a month after filing suit. *Id*. at 1120. In stark contrast to the plaintiff in *Graff*, LeMond Cycling has been domiciled in the state for 13 years.

Trek's reliance on *Ahlstrom v. Clarent Corp*., No. Civ. 02-780, 2002 WL 31856386, at *4-5 (D. Minn. Dec. 19, 2002) is similarly misplaced. Rahne Dec. at ¶ 8, Ex. 7. In *Ahlstrom*, more than half of the 39 plaintiffs did not reside in Minnesota, and the vast majority of the Minnesota-resident plaintiffs first sought to pursue their claims in California. *Ahlstrom*, 2002 WL 31856386, at *4-5. In fact, in *Ahlstrom*, the Court specifically noted that the particular circumstances surrounding the resident plaintiffs'

choice of forum did not fit with the normal heavy presumption in favor of a resident plaintiff's choice of forum. *Id*. at *5. There is nothing regarding the plaintiffs in the *Ahlstrom* decision that is remotely applicable to the particular circumstances of the LeMond Complaint, which (again) involves a plaintiff that is a long-time Minnesota resident whose principals, Greg and Kathy LeMond, have lived in the Minnesota for more than two decades.

### B. Transfer to the Western District of Wisconsin would only serve to shift an increased burden to LeMond Cycling.

Citing inapplicable case law, Trek argues that judicial economy compels transfer because it would be more convenient for Trek and its employee and former-employee witnesses. Even if all of Trek's contentions regarding the various necessary witnesses were accurate, which they are not, the argument would be insufficient to compel transfer. In light of the more accurate scope of this litigation, transfer is illogical.

Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Graff*, 33 F. Supp. 2d at 1121 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)). In considering the issue of convenience to witnesses, courts have focused on a number of factors including the number of non-party witnesses and the location of all witnesses. *See Graff*, 33 F. Supp. 2d at 1121 (citing *Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731, 732 (D. Minn. 1984)). To prevail on his motion to transfer, the defendant must show that his inconvenience *substantially outweighs* the inconvenience

that the plaintiff would suffer if venue were transferred. *Nelson v. Soo Line Railroad Co.*, 58 F. Supp. 2d. 1023, 1026 (D. Minn. 1999); *Nelson v. Bekins Van Lines Co.*, 747 F. Supp. 532, 535 (D. Minn. 1990); *Imation Corp.*, No. 97-2475, 1998 U.S. Dist. LEXIS 16859 at *10-11.

Despite Trek's desire to limit the witnesses and evidence in this case to Trek's headquarters, decision-makers, employees, and former employees in Wisconsin, LeMond Cycling's allegations require discovery and testimony from not only witnesses and entities located in Wisconsin, Minnesota, and many other states where Trek has dealers, but also witnesses and entities in many of the 60 countries defined as "the Territory" for the Agreement. The burden on the parties to engage in discovery outside of Minnesota and Wisconsin is equivalent, and videotaped trial depositions can alleviate the need and burden for these witnesses to travel to trial. Where live testimony is preferred or required from witnesses outside of Minnesota, the costs to these witnesses to appear in either Wisconsin or Minnesota should be roughly similar if not actually favoring Minnesota given the relative ease of accessing Minneapolis versus Madison. In addition, the burden on the parties to engage in depositions and other discovery outside of Minnesota and Wisconsin is equivalent.

Moreover, under the law of this District, "[t]he party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Northwest Airlines, Inc. v. Filipas*, No. 07-4803 (JNE/JJG), 2008 U.S. Dist. LEXIS 31084, at *16 (D. Minn. Apr. 15, 2008) (*citing Graff*, 33 F. Supp. 2d at 1121) (a copy of *Northwest Airlines, Inc. v. Filipas* is attached to Rahne

Dec. at ¶ 8, Ex. 8); *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397 (D. Minn. 1991); *Imation Corp.*, No. 97-2475, 1998 U.S. Dist. LEXIS 16859 at *11-12. In *Nelson v. Master Lease Corp.*, for example, this Court specifically noted that general statements about the location of witness is not helpful in establishing the relative convenience of one forum over another. *Nelson*, 759 F. Supp. at 1402 ("The defendant has made only general statements about the location of witnesses and has failed to state clearly and specifically why Pennsylvania is a superior forum. Likewise, plaintiff merely lists witnesses located in or near Minnesota. Therefore, the Court concludes that this factor is not helpful in resolving the question of which jurisdiction is most appropriate to hear this action.").

The analysis in *Imation Corp.* is also instructive. No. 97-2475, 1998 U.S. Dist. LEXIS 16859 at *11-12. In its analysis in this decision, this Court specifically noted that "a laundry list of potential witnesses in this lawsuit" is insufficient to meet a movant's burden on balance of convenience. *Id*. The Court further noted that movants must provide the court with details regarding quality of the testimony, the willingness of the witness to appear, whether deposition testimony would be unsatisfactory, and whether compulsory process would be necessary or possible. *Id*. Where, as with Trek's request, a party fails to provide supporting exhibits, affidavits, or declarations that clarify these issues, a movant cannot be said to have met its burden with respect to the balance of convenience. *Id*.

Trek has not met its burden regarding the claimed inconvenience to its preferred witnesses. *See* Trek Mem. at 7-8. Similar to the situation in *Imation Corp.*, Trek has

merely indicated that it "anticipates calling several witnesses" each of which it identifies only by title not name. *Id*. Trek does not provide specific details regarding their testimony and willingness to appear, only stating generally that these unnamed individuals "will testify about Trek's marketing, promotion, and sales efforts of LeMond branded products" and that they are all located in Wisconsin. *Id*. Regarding witnesses outside of Wisconsin, Trek merely states, without naming a single specific witness, that "it may need to call former employees who reside in Wisconsin" and that these witnesses "could not be compelled to testify in Minneapolis." *Id*. at 8. Trek's general and conclusory statements fall far short of the showing necessary to satisfy its burden with respect to the balance of convenience.

Overall, transfer to the Western District of Wisconsin will simply shift the inconvenience from Trek, a $700 million+ per year company, to LeMond Cycling, a $15 million company with two full-time employees and one part-time employee. LeMond Dec. at ¶ 3. The two companies' relative ability to absorb the impact of the litigation within its operations does not remotely compare. Presumably, all depositions will be done to accommodate the deponents' geographic locations. When it comes to trial, if a Trek employee must travel to participate, Trek's operations can continue largely undisturbed. Should the two full-time and one part-time employees of LeMond Cycling be forced to travel, the company's ability to operate will be much more severely hampered.

This is not to mention the relative burden that the cost of such travel imposes on the two companies. Again, Trek's per-annum sales exceed $700 million, and it has more

than adequate resources to manage the travel that would be required related to this case. LeMond Cycling, on the other hand, is not only a fraction of the size, but its finances have been significantly hampered by Trek's recent unwillingness to pay LeMond Cycling for amounts due to it under the Agreement, despite the fact that Trek continues to sell LeMond-branded bikes after it publicly defamed and disparaged LeMond. LeMond Dec. at ¶ 4; *see also Nelson.,* 759 F. Supp. at 1401-02 ("The apparent inability of the plaintiff (a person without substantial personal or business assets) to litigate this action in Pennsylvania strongly suggests that this litigation is best pursued in Minnesota. Defendant is a large corporation with operations across the United States and the ability to protect its interests in this forum. The Court finds that defendant's general claims about the expense of moving records and personnel to Minnesota are insufficient to overcome the obvious hardship imposed on plaintiff if this action were transferred.").

**C. Trek's forum shopping effort does not serve judicial economy.**

Trek further argues that judicial economy compels transfer because the lawsuit that it commenced after having been served with the LeMond complaint is a factor supporting transfer "in the interests of justice." Def. Mem. at 8-10. To the contrary — to the degree that the lawsuit that Trek filed is any sort of factor in such an analysis, it is a factor that strongly discourages the requested transfer.

The timeline regarding the Wisconsin action is clear. On March 20, 2008, LeMond Cycling commenced a lawsuit against Trek. One day after being served, Trek's counsel requested additional time to consider the allegations before LeMond Cycling filed its complaint and before Trek would be required to answer. LeMond Cycling

consented to allow Trek until the end of April to consider the complaint before the LeMond Complaint would be filed with the Hennepin County District Court or Trek would be required to answer. Trek then proceeded to file a complaint seeking *only* declaratory relief in the Western District of Wisconsin, and then held a press conference to announce the same. The interests of justice would not be served in this instance for three reasons.

**1. This Court should not condone Trek's forum shopping.**

*First*, transfer of the District of Minnesota case would endorse and encourage forum shopping. Not only was the case in the Western District action filed nearly two and one-half weeks after LeMond Cycling commenced the Minnesota lawsuit, but Trek's Complaint was filed only after Trek made its explicit request that LeMond Cycling not file, and Trek not be required to answer, until the end of April 2008.

**2. Transferring this lawsuit to Wisconsin would run contrary to the Eighth Circuit's policy reasons underlying the first-to-file rule.**

*Second*, while Trek does not argue for transfer based on the first-to-file rule, both the policy considerations underlying this rule and Trek's effort to file a declaratory judgment action after it was served with the LeMond Complaint strongly discourage the requested transfer. More specifically, the Eighth Circuit has held that district courts should consider certain "red flags" to disregard the first-to-file rule. *See, e.g., Northwest Airlines*, 989 F.2d at 1006-07; *Ecolab Inc. v. S&L Enters*., 2005 U.S. Dist. LEXIS 16998, at *5-6 (D. Minn. Aug. 12, 2005) (attached to Rahne Dec. at ¶ 10, Ex. 9). These "red flags" include: first, that the "first" suit was filed after the other party gave notice of its

intention to sue; and, second, that the action was for declaratory judgment rather than for damages or equitable relief. *See Northwest Airlines*, 989 F.2d at 1006-07; *see also Ecolab Inc.*, 05-1044, 2005 U.S. Dist. LEXIS 16998 at *5-6 (applying Eighth Circuit rule that important "red flags" arguing against transfer are that a party was on notice of an impending suit or that the first-filed action was for declaratory judgment).

In the instant case, both red flags are present. LeMond Cycling, and not Trek, commenced the first lawsuit here. Trek only filed its complaint more than two weeks after LeMond Cycling commenced this lawsuit. Moreover, Trek's "follow-on" complaint does not seek anything other than declaratory relief.

**3. The court that first acquires jurisdiction should proceed to adjudicate the controversy, and that court is in Minnesota.**

*Third*, as between two courts who have jurisdiction over a dispute, the court in which jurisdiction first attached should proceed to adjudicate the controversy. *Boatmen's First Nat'l Bank v. Kansas Pub. Emples. Retirement Sys.*, 57 F.3d 638, 641 (8th Cir. 1995) (citing *Northwest Airlines*, 989 F.2d at 1004). Here, LeMond Cycling commenced a lawsuit against Trek on March 20, 2008 pursuant to the Minnesota Rules of Civil Procedure. *See* Minn. R. Civ. P. 3.01; Def. Mem. at n.1; Exhibit 3 of the Declaration of Erik T. Salveson. That lawsuit captures the entirety of the dispute between the parties. Def. Mem. at 9. Because there is nothing in the Western District of Wisconsin action that cannot be adequately dealt in this action (which was commenced more than two weeks earlier), Trek's request for transfer should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Transfer.

Dated: May 7, 2008.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: /s/ Denise S. Rahne

Christopher W. Madel (#230297)
Denise S. Rahne (#331314)
Jennifer M. Robbins (#387745)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Phone: 612-349-8500
Fax: 612-339-4181

**ATTORNEYS FOR PLAINTIFF LEMOND CYCLING, INC.**