UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEMOND CYCLING, INC.,

    Plaintiff,

v.

TREK BICYCLE CORPORATION,

    Defendant.

Case No. 08-CV-01010-RHK-JSM

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER**

    Plaintiff LeMond Cycling does not dispute that under 28 U.S.C. § 1404(a), this lawsuit could have originally been brought in the Western District of Wisconsin. The only issue, therefore, is whether the balance of statutory and case-specific factors should result in transfer. As Trek set forth in its Motion to Transfer and supporting Memorandum, the balance of those factors strongly favors transfer to Madison, which is only a few miles from where the operative facts giving rise to this dispute occurred and where the key witnesses are located. Plaintiff's attempt to avoid the facts and legal authority supporting transfer is unavailing.

## I. PLAINTIFF DOES NOT DISPUTE THAT THE FACTS GIVING RISE TO THIS ACTION OCCURRED IN WISCONSIN, BUT RATHER SEEKS TO AVOID THIS CRITICAL FACTOR BY APPLYING AN INCORRECT STANDARD TO TREK'S MOTION TO TRANSFER.

    It is undisputed that the vast majority of the operative facts giving rise to this action occurred in Wisconsin, not Minnesota. The essence of Plaintiff's claim is the allegation that Trek failed to promote, market, and sell LeMond branded products

1

properly. Virtually all of the decisions and actions relating to these tasks were performed by Trek employees at Trek's Wisconsin headquarters. Plaintiff does not dispute that the focus of this case is in Wisconsin; nor does it attempt to argue that the operative facts occurred in Minnesota. At most, Plaintiff suggests that the alleged breach of "best efforts" took place throughout North America and sixty countries.[1] (Plf's. Memo. at 3.) This broad statement does not alter the truth that the essential operative facts relating to this action occurred in Wisconsin.

Unable to challenge that the basis of this action is Wisconsin, Plaintiff instead argues that its choice of forum should control. Not only is this argument incorrect, but Plaintiff relies upon an incorrect standard and inapposite case law to support it. Plaintiff cites *forum non conveniens* cases for the proposition that the plaintiff's choice of forum should "rarely" be disturbed. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947). That standard does not apply to Section 1404 motions, however, and thus is plainly inapplicable here. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) (The "common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] *only in cases where the alternative forum is abroad*,'* . . .

---

[1] A review of these allegations, however, despite plaintiff's attempt to paint them with a broad brush, show that they largely involve alleged decisions by Trek, headquartered in Waterloo, Wisconsin. *See e.g.*, LeMond Cycling Compl. at ¶ 110 (notifying Trek sales representative in "numerous states" Trek was giving up the brand); ¶ 118 (notifying international dealers that distribution of the brand was ending); ¶¶ 120-25 (not established a cycling team sponsorship; sales figures for particular countries); ¶ 137 (provision of stock to dealers).

and perhaps in rare instances where a state or territorial court serves litigational convenience best.") (emphasis supplied).

Indeed, this Court in *Ahlstrom* specifically warned against relying on the higher presumption afforded plaintiff's choice of forum under *forum non conveniens* when it observed that "plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of forum non conveniens, and is simply one factor to be considered:"

> The enactment of 28 U.S.C. § 1404, which controls interstate transfers of cases in federal courts, had the effect of limiting forum non conveniens analyses to cases where the alternative forum is the court of another country. *See American Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2 (1994). The language that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" initially appeared in *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947), a leading Supreme Court decision concerning dismissal on the ground of forum non conveniens. See Charles A. Wright et al., *Federal Practice and Procedure* § 3848 (1986 and 2002 pocket part). Many transfer of venue opinions decided since § 1404(a) was enacted in 1948 continued to use that language as the standard of decision. In 1955, the Supreme Court clearly stated that § 1404 was not simply a codification of the forum non conveniens doctrine: "Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a *lesser showing of inconvenience*. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that *the discretion to be exercised is broader*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (emphasis added). Thus, as this Court has observed, **the strict burden of proof enunciated in *Gilbert* is inapposite to a § 1404(a) transfer motion.** "In light of the Court"s decision in *Norwood*, it is now clear that a **plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of forum non conveniens, and is simply one factor to be considered**." *Medtronic, Inc. v. American Optical Corp*., 337 F. Supp. 490, 497 (D. Minn. 1971) (Larson, J.).

*Ahlstrom v. Clarent Corp.*, No. Civ. 02-780, 2002 WL 31856386, at *3 n.9 (D. Minn. Dec. 19, 2002) (Kyle, J.) (emphases in bold supplied).

Plaintiff not only relies on an incorrect standard, but also ignores the correct standard for determining the "convenience of parties" factor which this Court has applied in *Graff* and other cases. While there is a general presumption in favor of plaintiff's choice of forum, courts afford less deference to that choice when either the plaintiff does not reside there **or the transaction or underlying facts did not occur there.** *See, e.g., Ahlstrom,* at *4; *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate and Financial Services, Inc.*, No. Civ. 02-1224, 2003 WL 1572007, *2 (D. Minn. Mar. 13, 2003) (Kyle, J.) (granting motion to transfer stating: "GMAC is headquartered in the District of Minnesota. Plaintiff's choice of forum, however, is given substantially less weight if 'operative events' giving rise to the lawsuit took place in a forum other than that chosen by the plaintiff. 17 Moore's Federal Practice § 111.13[1][c]"); *see also Northwest Territory Ltd. P'ship v. OMNI Props., Inc.*, No. Civ. 04-4531, 2005 WL 3132350, *7 (D. Minn. Nov. 22, 2005) (transferring to forum in which operative events occurred even though plaintiff brought suit in home forum) (Ericksen, J.); *Road Machinery & Supplies, Co., Inc. v. Fed. Signal Corp.*, No. Civ. 03-3524, 2003 WL 22326577, *4 (D. Minn. Oct. 7, 2003) (Frank, J.) (same).

The cases cited by plaintiff are inapposite for one or more of the following reasons: they are *forum non conveniens* cases;[2] they do not involve application of the

---

[2] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007), *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), *EFCO Corp. v. Aluma Sys. USA, Inc*., 268 F.3d 601 (8th Cir. 2001).

4

Section 1404(a) standards;[3] the operative facts took place in Minnesota;[4] judicial economy warranted keeping them in Minnesota because the Minnesota federal courts had spent considerable time on case[5]; or they just simply do not involve the coalescence of all of the factors present in the instant case.[6]

II. *GRAFF* AND THE OTHER CASES CITED BY TREK ARE CONTROLLING.

Plaintiff argues that this Court should deny Trek's motion because: (1) LeMond Cycling is a Minnesota resident; (2) LeMond Cycling commenced suit first in Minnesota, (3) Trek's Wisconsin lawsuit seeks only declaratory relief, and (4) the "convenience of the parties" factor favors neither party because the "operative" facts and witnesses are "spread well beyond Wisconsin and Minnesota." (Pl.'s Mem. at 5-6). None of these facts or arguments merited denial of transfer in *Graff v. Qwest Communications Corp.*, 33

---

[3] *Eggleton v. Plasser & Theurer Export von Bahnbaumaschinen Gesellschaft*, 495 F.3d 582, n. 3 (8th Cir. 2007) (choice of law issue); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir. 1994) (personal jurisdiction).

[4] *Christensen Hatch Farms, Inc. v. Pleavey Co.*, 505 F. Supp. 903, 910-911 (D. Minn. 1981) ("Much of the evidence and many of the key witnesses are located in Minnesota. Additionally, the claims allegedly arose in Minnesota.").

[5] *Hammann v. 1-800 Ideas.com, Inc.,* 455 F. Supp.2d 942, 963 (D. Minn. 2006) (factors did not warrant transfer where courts had already "invested significant time and resources in adjudicating the pretrial issues"); *Pragmatic C Software Corp. v. Antrim Design Sys.*, No. 02-2595, 2003 U.S. Dist. LEXIS 1824 at *18 (D. Minn. Jan. 28, 2003) ("This Court is already familiar with the somewhat complex factual history between the parties, and has begun to sort through the copyright and breach of contract claims.")

[6] *E.g., Facilitec Corp v. Omni Containment Sys.*, LLC, No. 03-3187, 2003 U.S. Dist. LEXIS 13250 (D. Minn. July 31, 2003) (Kyle, J.) (finding none of the factors weighed in favor of transfer).

5

F. Supp. 2d 1117 (D. Minn. 1999), and neither should they here. In *Graff*, the plaintiff had served and filed a breach of employment contract action in Minnesota state court on November 6, 1998, nearly a month before defendant filed its federal court action in Colorado. *Graff*, 22 F. Supp. 2d at 1118. Defendant filed a declaratory judgment action on December 4, 1998, in Colorado federal court seeking a declaration that it did not breach the party's contract by not tendering shares of stock in question. Defendant also removed the Minnesota state court action to Minnesota federal court the same day. *Id.* Upon plaintiff's motion to remand, defendant moved to transfer the Minnesota action to Colorado for consolidation with the federal action there. *Id.*

The Court granted the motion even though: (1) plaintiff was a resident of Minnesota; (2) defendant filed a federal declaratory judgment action, (3) after plaintiff filed its state court action; and (4) there were some facts and witnesses located outside of the transferee forum—Colorado. *See id.* Transfer was warranted because the convenience of the parties and the interest of justice factors swung the balance strongly in favor of Colorado. *Id.* at 1121. Defendant was headquartered in Colorado. The events giving rise to the plaintiff's claims occurred in Colorado. Most of the essential witnesses worked in Colorado at defendant's headquarters (employees of defendant involved in negotiating the contract and administering the plan at issue). Plaintiff had travelled extensively from Minnesota to Colorado in the past. Thus, the Court found the "net inconvenience to the parties will be less if this case is transferred to Colorado." *Id.* The Court also found that the "interest of justice" factor, which it stated is "weighed very

heavily," favored transfer because the pendency of the two actions involving the same facts in two different forums would be duplicative and could lead to conflicting orders.[7] *Id.* at 1122.

In short, the factors that warranted transfer in *Graff* are also present here. Plaintiff's attempt to distinguish *Graff* simply on the basis that LeMond Cycling, and Greg and Kathy LeMond, have been long-time residents of the chosen forum, as opposed to the few days or weeks in *Graff,* is without merit. Plaintiff cites no case law that length of residency is determinative.[8] In any event, because the operative facts took place in Wisconsin not Minnesota, plaintiff's residency is afforded little deference.

*Ahlstrom v. Clarent Corp*., No. Civ. 02-780, 2002 WL 31856386 (D. Minn. Dec. 19, 2002) (Kyle, J.), is equally on point. Plaintiff's attempt to distinguish it is similarly unavailing. *Ahlstrom* involved a shareholder suit where nearly half the plaintiffs resided in Minnesota. In finding transfer was warranted, the Court reasoned that the resident-plaintiffs' choice was entitled to little deference where the operative events took place outside of Minnesota and Minnesota appeared to be the resident-plaintiffs' "second

---

[7] Although the Court found that the "convenience of the witnesses" factor did not strongly favor transfer since it was possible that both parties would seek to introduce non-party witnesses outside the subpoena power of the other court, *id*. at 1122, transfer was nonetheless warranted in light of the other factors described herein.

[8] Moreover, Greg and Kathy are not plaintiffs in this action and it is not clear from Greg LeMond's declaration that they are the LeMond Cycling employees referred to generally in the declaration. While Greg LeMond's declaration states LeMond Cycling has two full-time and one part-time employee, he does not explicitly identify that he and Kathy are any of these employees. He, likewise, does not explicitly identify the residency of these three non-named employees nor does he identify where they work.

7

choice" after having missed the deadline for being named lead plaintiffs in a California class action[9] Here, as in *Ahlstrom*, the operative facts occurred outside of Minnesota (indeed, in Wisconsin). Contrary to plaintiff's contention, the circumstances of the LeMond Minnesota Complaint are not "normal" in light of the history of this litigation— service of two lawsuits as a threat to Trek, and the actual filing in Minnesota only after Trek filed its own lawsuit. (*See*, *infra* at section VI). Like the resident-plaintiffs in *Ahlstrom*, the filing of the Minnesota Complaint here was LeMond Cycling's "second choice" when Trek did not give in to the threats.

### III. THE CONVENIENCE OF THE WITNESSES AND PARTIES FAVORS TRANSFER TO WISCONSIN.

Plaintiff argues transfer should not be granted because it would merely shift the inconvenience. Plaintiff is wrong. The convenience of the witnesses and parties favors transfer to Wisconsin. First, while there will be witnesses from other states, most witnesses will be Trek employees in Wisconsin. This case involves performance of a licensing agreement and specifically Trek's efforts to promote, market and sell LeMond branded products. Trek, through its employees, will explain fully all its decisions and actions regarding promotion, marketing, and sales. Nearly all of these tasks were performed by Trek employees at Trek's headquarters. Thus, the Madison federal court is the ideal forum for this case.

---

[9] This latter point was described as not a "normal" circumstance surrounding a choice of forum. *Id.* at *5.

Second, contrary to Plaintiff's claims, Trek has met its burden to specify and give a general statement about the testimony of witnesses it expects to call. While Trek did not provide names of every witness or give detailed recitation of each person's possible testimony, such detail is not required. *See Ahlstrom*, 2002 WL 31856386, *9, n.12 ("Plaintiffs object that, in support of the motion for change of venue, Defendants should have provided the names of the non-party witnesses they expected would be called and a general statement of their testimony. As this Court long ago observed, however, 'this is not a requirement sine qua non' for transfer. . . . In this case, having concluded that the interests of justice weigh heavily in favor of transfer, Defendants' failure to provide information about witnesses does not defeat the motion."); *Guenther v. Cooper Life Sciences, Inc.*, 1988 WL 131340, *3 (D. Minn. 1988).

In any event, Trek provided detailed information for this Court to make a determination as to the materiality and importance of the witnesses' testimony as well as their accessibility and convenience to the forum. *Graff*, 33 F. Supp. 2d at 1122. Namely, Trek identified persons who, over the course of the parties' business relationship, would have made decisions regarding marketing, promotion, sales and the performance of the licensing agreement: President, Director of Product Marketing, National Sales Manager, Product Manager, International Sales Manager, Vice President of Finance, WSD Brand Manager, Inside Regional Manager, Director of Product Development and other Trek employees. (Def's Mem. at 8). Trek submitted an affidavit of Dean Gore who identified himself as the Director of Product Marketing and John Burke as the President. (Gore Aff.

1, 3). Mr. Gore explained that the majority of Trek's marketing, promotion and sales decisions are made in Waterloo, Wisconsin, including decisions about international efforts, and that the employees who made these decisions work at Trek's Wisconsin headquarters. (*Id*. at 3).[10] By contrast, plaintiff has not specifically identified any witnesses it expects to call, nor the content of their testimony.

Third, transfer to Wisconsin will not impose an unreasonable hardship on LeMond Cycling. Wherever trial takes place, LeMond Cycling's employees are going to have to be away from their job duties to participate. LeMond Cycling has not shown how the time spent traveling or for trial, is going to have a significant impact on LeMond Cycling's operations. As LeMond Cycling admits, the cost of litigation for discovery and witnesses outside of Minnesota and Wisconsin will be the same for either party regardless of the forum. As for trial, LeMond Cycling, as a $15 million dollar company with presumably relatively little overhead (*e.g.,* three employees), is certainly able to cover the cost of travel to Wisconsin. Indeed, Greg LeMond has traveled extensively to Wisconsin in the past, at times piloting himself to Trek functions.[11]

## IV. TREK COMMENCED AN ACTION IN WISCONSIN FEDERAL COURT BECAUSE THAT IS WHERE THE CLAIMS AROSE AND WHERE THEY SHOULD BE DECIDED.

---

[10] Trek has also submitted a Second Affidavit of Dean Gore specifically naming the witnesses if this will aid the Court. (Trek Ex. 3, Gore Aff.)

[11] Plaintiff further asserts its finances have been hampered by Treks' "unwillingness to pay … amounts due." (*Id.* at 14). This claim is false. Trek submits with this Reply the affidavit of Joe Siefkes showing that the reason payments were not made is because LeMond, in fact, owes money to Trek as a result of bicycles and accessory purchases from Trek that exceed the royalties due LeMond Cycling by over $61,000. (Trek Ex. 2, Siefkes Aff.).

Trek's decision to commence a legal action against LeMond Cycling in United States District Court for the Western District of Wisconsin was driven by a need to protect its interests, given past conduct by LeMond Cycling. LeMond Cycling focuses only on its Minnesota lawsuit which it served on March 20, 2008. It fails to mention that in 2004, it served, but did not file, a similar lawsuit against Trek. At that time, Trek notified LeMond Cycling that it was in breach of the sub-license agreement due to actions by Greg LeMond, including disparaging statements that damaged the value of the LeMond trademarks and Trek's ability to market LeMond products. Trek further notified LeMond Cycling that Trek was entitled to terminate the agreement and that LeMond Cycling should find another business partner for its brand. (Trek 4/8/08 Complaint at ¶¶ 28-29.) After failing to find another company to license the LeMond brand, LeMond Cycling served and threatened to file a lawsuit making numerous disparaging statements harmful to Trek and its business interests. (*Id.* at ¶ 30.) Given the damage litigation would cause to Trek and LeMond brand, Trek was forced to withdraw the notice of breach and continue to do business with LeMond Cycling.

Unfortunately, Greg LeMond continued to damage the brand and Trek's business interests, breaking written promises not to do so. (*See id*. at ¶¶ 31-39). In Fall 2007, Trek's president John Burke met with Greg LeMond and advised him that Trek would not be extending the Licensing Agreement beyond its 2010 expiration and gave LeMond permission to look for other business partners. (*Id.* at 40). During this time, and just before LeMond Cycling's March 20, 2008, service of the lawsuit on Trek, Trek's counsel

wrote to LeMond Cycling's counsel in an attempt amicably to wind-down the business relationship. (Trek Ex. 1, Burns Aff.; Trek Ex. 1A, Letter from Burns to Bluming, February 29, 2008.). LeMond Cycling responded by serving but not filing this lawsuit along with a transmittal letter stating the Complaint was not "publicly-available at this time." (Def.'s Mem. in Support of Mot. to Transfer, Ex. 3). As it had done in 2004, LeMond Cycling sought to make Trek fearful of the publication of the allegations in the Minnesota Complaint and compel a continued business relationship and/or payment of money that was not owed. (Trek 4/8/08 Compl. at ¶¶ 41-42).

Unlike 2004, this time, Trek could not sit silent in the face of threatened negative publicity. Instead, Trek exercised its right to file a lawsuit in Wisconsin federal court on April 8, 2008, the day before the deadline for having to answer the Minnesota Complaint.[12] Due to LeMond Cycling's threat to make "publicly-available" its Minnesota Complaint filled with disparaging allegations, it was necessary for Trek to

---

[12] *Plaintiff incorrectly asserts that Trek requested an extension of time to file an answer to the Minnesota state court action.* (Pl.'s Mem. at 3-4, 14-15) LeMond Cycling's counsel Sidney Bluming's declaration does not support plaintiff's assertion that Trek requested time *to answer* the Minnesota Complaint. The email exchange attached to Mr. Bluming's declaration shows that Trek's counsel asked for additional time before LeMond Cycling *filed* the already served Complaint in accord with Minnesota procedure. As LeMond Cycling admits, in Minnesota state court, service (not filing) initiates a lawsuit. (*Id.* at 1). As such, the clock began ticking on March 20, 2008, to answer—20 days—giving Trek until April 9, 2008. The clock was also ticking for removal—30 days—to federal court. Trek's request for a delay in *filing* would not have changed these 20 and 30-day deadlines. Thus, it should have come as no surprise to plaintiff in light of the history of this litigation and the fact that *no extension of <u>time to answer</u>* was asked for or received, that Trek would be taking action on or before April 9, 2008.

communicate to its employees, dealers and customers, in a direct and accurate way. It did so through an employee meeting to which the press was invited.

Plaintiff's suggestion that the pending suit in Wisconsin is not a factor to be considered is simply wrong. (Plf's. Memo. at 15.) Clearly, under *Graff* and *Ahlstrom*, it is a significant factor. The cases cited by Plaintiff are inapposite. If anything, *Northwest Airlines, Inc. v. Filipas*, No. 07-4803, 2008 U.S. Dist. LEXIS 31084 (D. Minn. Apr. 15, 2008), actually supports Trek. There, Northwest brought a Declaratory Judgment action in Minnesota federal court after pilots had brought a suit in a Washington federal court. The pilots moved to stay or transfer the Minnesota federal action on the ground that the Washington action was the first filed and the Northwest's Minnesota action was simply a forum-shopping attempt or preemptive strike. The Court denied the pilots' motions finding no evidence of forum-shopping or that filing of a declaratory judgment action was a preemptive strike. *Id.* at **10–12.

Here, while LeMond Cycling claims it "commenced the first lawsuit" in Minnesota, it has not, as in *Northwest*, made a motion to stay or transfer Trek's Wisconsin action based on the first-to-file rule. Here, as in *Northwest,* Trek's filing of the Wisconsin action for declaratory relief was not an attempt to forum-shop or as a preemptive strike. The timeline of this case and the historic context show that Trek was not trying to take advantage of LeMond Cycling by filing the Wisconsin action, but rather was simply protecting its interests. Indeed, LeMond Cycling was trying to take advantage of Trek by serving a Complaint with damaging allegations and threatening to

file it unless Trek met its demands. LeMond Cycling's action set into motion a set of deadlines to which Trek rightfully responded.

## CONCLUSION

Because plaintiff has not disputed that it could have brought suit in the Western District of Wisconsin and because the balance of statutory and case-specific factors strongly favors transfer, Trek requests the Court grant its motion to transfer.

Dated this 15 day of May, 2008.

HALLELAND LEWIS NILAN & JOHNSON, P.A

By:\_\_\_\_Erik T. Salveson_____
   Erik T. Salveson (Reg. No. 177969)
   Amanda M. Cialkowski (Reg. No. 306514)
   Benjamin R. Rolf (Reg. No. 386413)
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
Telephone (612) 338-1838
Fax: (612) 338-7858

Of Counsel

Ralph A. Weber (State Bar No. 1001563)
Christopher P. Dombrowicki (State Bar No. 1041764)
Kristal S. Stippich (State Bar No. 1061028)
GASS WEBER MULLINS LLC
309 North Water Street, Suite 700
Milwaukee, WI 53202
Telephone: (414) 223-3300
Fax: (414) 224-6116
Email: weber@gasswebermullins.com
       dombrowicki@gasswebermullins.com
       stippich@gasswebermullins.com

**ATTORNEYS FOR DEFENDANT**