# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

LeMond Cycling, Inc.,                          Case No. 08-CV-01010 (RHK/JSM)

      Plaintiff,

v.

Trek Bicycle Corporation,

      Defendant/Third-Party Plaintiff,

v.

Greg LeMond,

      Third-Party Defendant.

## PLAINTIFF LEMOND CYCLING, INC. AND THIRD-PARTY DEFENDANT GREG LEMOND'S ANSWER TO DEFENDANT TREK'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Plaintiff LeMond Cycling, Inc. ("LeMond Cycling") and Third-Party Defendant Greg LeMond ("LeMond"), for their Answer to the Counterclaim and Third-Party Complaint of Defendant Trek Bicycle Corporation ("Trek"), state and allege as follows:

### PARTIES

1.     Upon information and belief, LeMond Cycling and LeMond admit the allegations contained in paragraph 1.

2.     LeMond Cycling and LeMond admit the allegations contained in paragraph 2.

3.     LeMond Cycling and LeMond admit the allegations contained in paragraph 3.

80380615.1

## JURISDICTION AND VENUE

4.      LeMond Cycling and LeMond admit the allegations contained in paragraph 4.

5.      LeMond Cycling and LeMond admit the allegations contained in paragraph 5.

## FACTUAL BACKGROUND

6.      With respect to the allegations contained in paragraph 6 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that Trek markets its products to a diverse group of consumers.  LeMond Cycling and LeMond are without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 6 and therefore deny the same, putting Trek to its proof.

7.      With respect to the allegations contained in paragraph 7 of Trek's counterclaim and third-party complaint, upon information and belief, LeMond Cycling and LeMond admit that Trek markets its products by associating the Trek brand with well-known bicyclists including Lance Armstrong. LeMond Cycling and LeMond affirmatively state that Trek entered into a Sublicense Agreement in 1995 and amended the Agreement in 1999 because LeMond's name had "acquired a reputation for a high standard for quality." LeMond Cycling and LeMond further affirmatively state that LeMond's extensive racing in Europe and his three Tour de France victories has led to world-wide recognition of the LeMond brand. LeMond Cycling and LeMond admit that LeMond has had several business partners including Giro Helmets and Oakley.

80380615.1

8.      With respect to the allegations contained in paragraph 8 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that LeMond is a former world-class cyclist and three-time winner of the Tour de France who formed LeMond Cycling. LeMond Cycling and LeMond affirmatively state that LeMond Cycling was formed for the purpose of building a brand associated with quality, innovative technology, and creativity. LeMond Cycling and LeMond admit that LeMond Cycling has licensed various trademarks associated with the LeMond name (collectively referred to as the "LeMond brand").  To the extent that further answer is deemed required, LeMond Cycling and LeMond deny the remaining allegations in paragraph 8.

9.      With respect to the allegations contained in paragraph 9 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that LeMond Cycling entered into a Sublicense Agreement with Trek on June 29, 1995, granting Trek the exclusive license to use the LeMond trademarks within the Territory (as defined by the Sublicense Agreement) in connection with the manufacture, advertisement, promotion, sale and distribution of Licensed Products.  LeMond Cycling and LeMond admit that the Sublicense Agreement provided that neither LeMond Cycling nor Greg LeMond would grant any third party in the business of manufacturing or selling Products the right to use the LeMond trademarks during the contract period. LeMond Cycling and LeMond affirmatively state that pursuant to the Sublicense Agreement and related 1999 Amendment LeMond was to be provided, at no charge, fifteen (15) bikes per contract year for personal use. LeMond Cycling and LeMond also affirmatively state

3

that LeMond had the long-established ability to avail himself of employee pricing for bikes that were often purchased for charities or charity events. LeMond Cycling and LeMond affirmatively state that LeMond founded a small bike company in 1986 that was at times undercapitalized and that struggled to keep up with consumer demand. LeMond Cycling and LeMond also affirmatively state that LeMond Cycling agreed to sublicense the LeMond brand to Trek after Trek approached LeMond and made representations regarding Trek's ability to market and promote LeMond-branded products and after Trek promised to use its best efforts to market and promote those brands. To the extent that further answer is deemed required, LeMond Cycling and LeMond deny the remaining allegations in paragraph 9.

10.     With respect to the allegations contained in paragraph 10 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that pursuant to the Sublicense Agreement, LeMond Cycling and LeMond agreed to assist in development and design of LeMond-branded products and attend promotion events such as radio talk shows, press conferences, photo shoots, and trade shows in return for Trek's best efforts in marketing and promotion of LeMond-branded products. Specifically, LeMond Cycling and LeMond agreed that LeMond would "provide reasonable services" and "when requested" by Trek LeMond would "be available for up to thirty 'Working Days.'" LeMond Cycling and LeMond affirmatively state that under sections 2.02.02 and 2.02.03, LeMond Cycling and LeMond agreed that LeMond would "reasonably cooperate" with Trek "in the design and development of Licensed Products." LeMond Cycling and LeMond admit that LeMond agreed to personally perform all of the

services required of LeMond Cycling under the Sublicense Agreement. To the extent that further answer is deemed required, LeMond Cycling and LeMond deny the remaining allegations in paragraph 10.

11.     With respect to the allegations contained in paragraph 11 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that since 1995 Trek has paid Greg LeMond more than $5 million based on sales made of LeMond-branded products. LeMond Cycling and LeMond further admit that Trek has invested in the design, manufacture, and marketing of LeMond-branded bicycles. LeMond Cycling and LeMond affirmatively state that Trek entered into the Sublicense Agreement after a thorough assessment of the value of the LeMond brand. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 11, specifically including any intimation that LeMond Cycling or LeMond did not meet their contractual obligations to assist in the promotion of the LeMond brand and the allegation that LeMond damaged his brand. LeMond Cycling and LeMond affirmatively allege that, to the degree the LeMond or Trek brands have been damaged, Trek is responsible for the damage.

12.     With respect to the allegations contained in paragraph 12 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that the Sublicense Agreement states that the LeMond brand "has acquired a reputation for a high standard for quality, and, through usage, has acquired distinctiveness and has become associated in the public's mind with the business of Greg LeMond, and by master license, [LeMond Cycling]." LeMond Cycling and

LeMond further admit that section 5.02 of the Agreement requires Trek to "use its best efforts to exploit the Mark . . . and to promote the sale of Licensed Products in the Territory so as to try to maximize sales, consistent with the quality and reputation of [LeMond Cycling], and only to retailers . . . which properly reflect the image and reputation of [LeMond Cycling]." LeMond Cycling and LeMond admit that section 8.02 of the Agreement refers to "the reputation and goodwill associated with [LeMond Cycling]" but expressly deny the remaining allegations in paragraph 12(c). LeMond Cycling and LeMond admit that sections 13.01.01 and 13.02.01 prohibit Trek from "tak[ing] any action which damages or has an adverse impact" on LeMond Cycling or LeMond Cycling's business or goodwill. LeMond Cycling and LeMond expressly deny the remaining allegations in paragraph 12(d). LeMond Cycling and LeMond admit that section 16.03 of the Agreement requires LeMond to render his services regarding development and design of LeMond-branded products, and personal appearances made at Trek's request in a professional and conscientious manner. LeMond Cycling and LeMond expressly deny the remaining allegations in paragraph 12(e). To the extent further answer is deemed required, LeMond Cycling and LeMond deny the remaining allegations in paragraph 12.

13.     With respect to the allegations contained in paragraph 13 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that it entered a First Amendment to the Sublicense Agreement with Trek on August 10, 1999.  LeMond Cycling and LeMond admit that the First Amendment increased the minimum royalty Trek was required to pay LeMond Cycling for use of the trademarks to $350,000 per contract year and extended the

term of the agreement to September 30, 2010. LeMond Cycling and LeMond admit that a copy of the First Amendment to the Sublicense Agreement was attached to Trek's original Complaint filed on April 8, 2008. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 13.

14.     With respect to the allegations contained in paragraph 14 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond deny the allegations that LeMond Cycling and LeMond did not work cooperatively with Trek or did not fulfill their obligations under the Sublicense Agreement. LeMond Cycling and LeMond are without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 14 and therefore deny the same, putting Trek to its proof.

15.     LeMond Cycling and LeMond deny the allegations contained in paragraph 15. LeMond Cycling and LeMond affirmatively allege that, to the degree the Trek or LeMond brands have been damaged, Trek is responsible.

16.     LeMond Cycling and LeMond deny the allegations contained in paragraph 16. LeMond Cycling and LeMond affirmatively allege that, to the degree the Trek or the LeMond brands have been damaged, Trek is responsible.

17.     With respect to the allegations contained in paragraph 17 of Trek's counterclaim and third-party complaint, upon information and belief, LeMond Cycling and LeMond admit that Trek operates its business through a network of dealers.  LeMond Cycling and LeMond are

80380615.1

without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 17 and therefore deny the same, putting Trek to its proof.

18.     LeMond Cycling and LeMond affirmatively state that Trek entered into a Sublicense Agreement in 1995 and amended the Agreement in 1999 because LeMond's name had "acquired a reputation for a high standard for quality." LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 18.

19.     LeMond Cycling and LeMond affirmatively state that LeMond's statements regarding Lance Armstrong are quoted in the Complaint. LeMond Cycling and LeMond deny the allegations contained in paragraph 19. LeMond Cycling and LeMond specifically deny that LeMond has ever disparaged Mr. Armstrong; Mr. LeMond has simply stated the truth.

20.     LeMond Cycling and LeMond deny the allegations contained in paragraph 20.

21.     LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the allegations contained in paragraph 21 and therefore deny the same, putting Trek to its proof.  LeMond Cycling and LeMond affirmatively state that upon information and belief, Trek receives communications supportive of LeMond and his stance against doping in professional cycling.  Upon information and belief, in an attempt to bias opinions as to LeMond and LeMond Cycling, Trek has deliberately chosen not to reveal such communications.

22.     LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the allegations contained in paragraph 22 and therefore deny the same, putting

80380615.1

Trek to its proof. LeMond Cycling and LeMond further repeat and incorporate by reference their response to paragraph 21 above as if fully set forth herein.

23. LeMond Cycling is without sufficient information to determine the truth or falsity of the allegations contained in paragraph 23 and therefore denies the same, putting Trek to its proof. LeMond Cycling further repeats and incorporates by reference its response to paragraph 21 above as if fully set forth herein.

24. LeMond Cycling and LeMond admit that Trek's president, John Burke, had discussions with LeMond regarding his public anti-doping statements. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 24.

25. LeMond Cycling and LeMond deny the allegations contained in paragraph 25.

26. With respect to the allegations contained in paragraph 26 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that in August of 2004, Trek sent LeMond Cycling a notice of breach. LeMond Cycling and LeMond affirmatively state that Trek withdrew its notice of breach after LeMond Cycling served Trek with a complaint seeking a judicial declaration that LeMond Cycling was not in breach. LeMond Cycling and LeMond affirmatively state that Trek withdrew its notice of breach with knowledge of LeMond's conduct and voluntarily continued to do business with LeMond Cycling for nearly 45 months. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 26.

80380615.1

27.    With respect to the allegations contained in paragraph 27 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond assert that the December 2004 complaint speaks for itself, deny any allegation inconsistent with that complaint, and deny the remaining allegations contained in paragraph 27.

28.    With respect to the allegations contained in paragraph 28 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that LeMond met with John Burke and that John Burke sent the email request quoted in paragraphs 28 and 29.  LeMond Cycling and LeMond deny any remaining allegations contained in paragraph 28, including that the email fully reflects the tenor and content of the prior conversation.

29.    With respect to the allegations contained in paragraph 29 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that John Burke sent the email request quoted in paragraphs 28 and 29.  LeMond Cycling and LeMond deny any remaining allegations intimated by paragraph 29, including that the email fully reflects the tenor and content of the conversation.

30.    With respect to the allegations contained in paragraph 30 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that LeMond sent the email statement quoted in paragraph 30.  LeMond Cycling and LeMond deny any remaining allegations implied in paragraph 30, including that the email fully reflects the tenor and content of related conversations between Trek and LeMond Cycling.

31.    With respect to the allegations contained in paragraph 31 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that Greg LeMond sent the email statement quoted in paragraph 31.  LeMond Cycling and LeMond deny any remaining allegations implied in paragraph 31, including that the email fully reflects the tenor and content of related conversations between Trek and LeMond Cycling, and further repeats and incorporates by reference its response to paragraph 30 above as if fully set forth herein.

32.    LeMond Cycling and LeMond deny that LeMond was ever under any enforceable obligation to Trek, restricting his right to speak honestly about matters of concern for the sport of professional cycling. LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the allegations regarding customer responses in paragraph 32 and therefore deny the same.  LeMond Cycling and LeMond affirmatively state that upon information and belief, Trek receives communications supportive of LeMond and his stance against doping in professional cycling.  Upon information and belief, in an attempt to bias opinions as to LeMond and LeMond Cycling, Trek has deliberately chosen not to reveal such communications.

33.    LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the allegations contained in paragraph 33 and therefore deny the same, putting Trek to its proof.  LeMond Cycling and LeMond further repeat and incorporate by reference their answer in paragraph 32 above as if fully set forth herein.

80380615.1

34.     LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the allegations contained in paragraph 34 and therefore deny the same, putting Trek to its proof.  LeMond Cycling and LeMond further repeat and incorporate by reference their answer in paragraph 32 above as if fully set forth herein.

35.     LeMond Cycling and LeMond admit that in an interview with "Tour" LeMond responded to the question "[y]ou haven't been in touch with Road Racing for a while," with "[t]his is for my problems with Armstrong.  I criticized his cooperation with Michael Ferrari and for that reason got into big trouble with Trek.  If I had loudly said what I thought this would have been suicide for my business."  LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 35.

36.     LeMond Cycling and LeMond deny the allegations contained in paragraph 36 and specifically assert that, to the extent that any damage to the Trek or LeMond brands has occurred, Trek is responsible.

37.     LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the allegations contained in paragraph 37 and therefore deny the same, putting Trek to its proof.  LeMond Cycling and LeMond affirmatively state that upon information and belief, Trek receives communications supportive of LeMond and his stance against doping in professional cycling.  Upon information and belief, in an attempt to bias opinions as to LeMond and LeMond Cycling, Trek has deliberately chosen not to reveal such communications.

80380615.1

38.     With respect to the allegations contained in paragraph 38 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that John Burke and LeMond met in November 2007 and that John Burke informally advised Greg LeMond that Trek would not be extending the agreement with LeMond Cycling beyond its 2010 initial term. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 38, specifically any allegation that LeMond Cycling or LeMond violated the Sublicense Agreement, and affirmatively state that, upon hearing Trek's position, Greg LeMond indicated that he would have to explore his options.

39.     LeMond Cycling and LeMond deny the allegations contained in paragraph 39.

40.     With respect to the allegations contained in paragraph 40 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that LeMond Cycling served a complaint in March of 2008 stating a claim for a breach-of-contract based on Trek's failure to use its best efforts in the promotion and marketing of LeMond-branded products within the Territory as defined by the Sublicense Agreement. LeMond Cycling and LeMond admit that the cover letter for its March 2008 Complaint states that the Complaint was not "publicly-available at this time." LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 40 and affirmatively state that the complaint speaks for itself.

41.     LeMond Cycling and LeMond deny the allegations contained in paragraph 41, and specifically deny any allegation that LeMond Cycling or LeMond breached any contractual obligations.

42.     LeMond Cycling and LeMond deny the allegations contained in paragraph 42, and specifically deny any allegation that LeMond Cycling or LeMond breached any contractual obligations.

43.     With respect to the allegations contained in paragraph 43 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond incorporate each of the foregoing paragraphs as if fully set forth herein.

44.     With respect to the allegations contained in paragraph 44 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond deny that Trek has complied with its obligations under the Sublicense Agreement, including the "best efforts" requirements. LeMond Cycling and LeMond admit that Trek has paid LeMond more than $5 million based on sales made of LeMond-branded products. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 44.

45.     With respect to the allegations contained in paragraph 45 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond deny that they have breached or repudiated the Sublicense Agreement. LeMond Cycling and LeMond affirmatively state that to the extent that the LeMond or Trek brands have been damaged, Trek is responsible. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 45.

80380615.1

46.     LeMond Cycling and LeMond deny the allegations contained in paragraph 46 and specifically deny any allegation that LeMond Cycling or LeMond breached the Sublicense Agreement or that Trek is excused from performance of the Agreement.

47.     With respect to the allegations contained in paragraph 47 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond deny that they have caused damage to Trek or LeMond brands. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 47.  LeMond Cycling and LeMond affirmatively state that to the extent Trek has been damaged, Trek is responsible.

48.     With respect to the allegations contained in paragraph 48 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that Trek purports to seek a declaration that it may terminate the Sublicense Agreement and a declaration providing for orderly severance of the parties' relationship. LeMond Cycling and LeMond deny any remaining allegations contained in paragraph 48 and specifically deny that LeMond Cycling or LeMond breached the Sublicense Agreement or any obligation of good faith and fair dealing.

49.     With respect to the allegations contained in paragraph 49 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond incorporate each of the foregoing paragraphs as if fully set forth herein.

50.     LeMond Cycling and LeMond deny the allegations in paragraph 50 and specifically deny that they have breached the Sublicense Agreement or caused damage to Trek.

80380615.1

LeMond Cycling and LeMond affirmatively state that to the extent Trek has been damaged, Trek is responsible.

51.     LeMond Cycling and LeMond deny the allegations in paragraph 51 and incorporate their answer to paragraph 50 as if fully set forth herein.

52.     With respect to the allegations contained in paragraph 52 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond incorporate each of the foregoing paragraphs as if fully set forth herein.

53.     Paragraph 53 contains legal conclusions to which an answer is not required. To the extent an answer is required, the allegations are denied. LeMond Cycling and LeMond specifically deny that Trek used its best efforts, as required by the Sublicense Agreement, or is entitled to the relief that it seeks.

54.     Paragraph 54 contains legal conclusions to which an answer is not required. To the extent an answer is required, the allegations are denied. LeMond Cycling and LeMond specifically deny that Trek used its best efforts, as required by the Sublicense Agreement, or is entitled to the relief that it seeks.

55.     Paragraph 55 contains legal conclusions to which an answer is not required. To the extent an answer is required, the allegations are denied. LeMond Cycling and LeMond specifically deny that Trek used its best efforts, as required by the Sublicense Agreement, or is entitled to the relief that it seeks.

80380615.1

56.    LeMond Cycling and LeMond deny the allegations contained in paragraph 56.

57.    With respect to the allegations contained in paragraph 57 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond incorporate each of the foregoing paragraphs as if fully set forth herein.

58.    With respect to the allegations contained in paragraph 58 of Trek's counterclaim and third party complaint, upon information and belief, LeMond Cycling and LeMond admit that Trek operates its business through a network of dealers.  LeMond Cycling and LeMond are without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 58 and therefore deny the same, putting Trek to its proof.

59.    With respect to the allegations contained in paragraph 59 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that pursuant to section 2.01 of the Sublicense Agreement, LeMond Cycling granted to Trek "the exclusive right and license (without the right to assign the same or grant sublicenses thereunder), to use the Mark in the Territory during the Contract Period in connection with the manufacture, advertisement, promotion, sale and distribution of" LeMond bicycles and bicycle frames.  LeMond Cycling and LeMond further admit that the First Amendment to the Sublicense Agreement retained the above-quoted language.  LeMond Cycling and LeMond affirmatively state that the Sublicense Agreement and First Amendment provided that neither LeMond Cycling nor LeMond would grant any third party in the business of manufacturing or selling Products, the right to use the

LeMond trademarks during the contract period. To the extent that further answer is deemed required, LeMond Cycling and LeMond deny the remaining allegations in paragraph 59.

60. With respect to the allegations contained in paragraph 60 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that LeMond is experienced in the bicycle industry, but deny sufficient knowledge or information as to what Trek believes LeMond Cycling and LeMond should be aware of. Upon information and belief, LeMond Cycling and LeMond admit that Trek operates its business through a network of dealers. LeMond Cycling and LeMond are without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 60 and therefore deny the same, putting Trek to its proof. LeMond Cycling and LeMond specifically deny that either LeMond Cycling or LeMond has ever knowingly participated in unauthorized sales of LeMond-branded bikes.

61. With respect to the allegations contained in paragraph 61 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that Trek is obligated to provide LeMond with 15 bikes per contract year for his personal use. LeMond Cycling and LeMond further admit that since 1999, with Trek's approval and support, LeMond has had the unlimited ability to purchase LeMond-branded bikes at employee pricing from Trek. LeMond Cycling and LeMond affirmatively state that it was often used to support charities and charity rides, which represented a valuable promotional opportunity for the LeMond brand, from which Trek benefited as well. LeMond Cycling and LeMond affirmatively state that all employee-pricing purchases, whether such purchases were for charitable purposes or gifts for friends and family of

18

LeMond, were done at employee pricing and not the retail amount referenced in paragraph 61. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 61. LeMond Cycling and LeMond specifically deny that either LeMond Cycling or LeMond has ever knowingly participated in unauthorized sales of LeMond-branded bikes

62.     With respect to the allegations contained in paragraph 62 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond admit that LeMond Zurich bikes retail for more than $2,800. Upon information and belief, LeMond Cycling and LeMond affirmatively state that the sales referenced in paragraph 62 were made to two individuals who were members of a charitable organization who LeMond agreed to sponsor for an AIDS Ride fundraiser and that the basis for the allegation is a misunderstanding between the participants and the dealer. LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the remaining allegations contained in paragraph 62 and therefore deny the same, putting Trek to its proof.

63.     LeMond Cycling and LeMond incorporate its answer to paragraph 62 of Trek's counterclaim and third-party complaint. LeMond Cycling and LeMond are without sufficient information to determine the truth or falsity of the remaining allegations contained in paragraph 63 and therefore deny the same, putting Trek to its proof.

64.     LeMond Cycling and LeMond admit that LeMond is entitled to 15 bikes per contract year for his personal use. LeMond Cycling and LeMond further admit that since 1999, with Trek's approval and support, LeMond has had the unlimited ability to purchase LeMond-

branded bikes at employee pricing from Trek. LeMond Cycling and LeMond affirmatively state that this arrangement has often been used to support charities and charity rides, which represented a valuable promotional opportunity for the LeMond brand from which Trek benefited as well. LeMond Cycling and LeMond deny the remaining allegations contained in paragraph 64. LeMond Cycling and LeMond specifically deny that either LeMond Cycling or LeMond has ever knowingly participated in unauthorized sales of LeMond-branded bikes.

65. LeMond Cycling and LeMond deny the allegations contained in paragraph 65 of Trek's counterclaim and third-party complaint.

66. With respect to the allegations contained in paragraph 66 of Trek's counterclaim and third-party complaint, LeMond Cycling and LeMond incorporate each of the foregoing paragraphs as if fully set forth herein.

67. LeMond Cycling and LeMond deny the allegations contained in paragraph 67 of Trek's counterclaim and third-party complaint.

## <u>AFFIRMATIVE DEFENSES</u>

1. As separate and affirmative defenses, and without admitting any of Trek's allegations or conceding the burden of proof as to any issue found to be an element of any of Trek's causes of action rather than an element of an affirmative defense, LeMond Cycling alleges the following separate and independent affirmative defenses based upon information now known. LeMond Cycling reserves its right to amend its affirmative defenses.

80380615.1

2.      Trek's claims fail to state a claim upon which relief can be granted.

3.      Trek's claims are barred by the doctrine of estoppel.

4.      Trek's claims are barred by the doctrine of waiver.

5.      Certain promises that Trek claims to have been breached fail for lack of consideration.

6.      Trek's claims are barred because to the degree any damage has been done to any of Trek's brands, it has been caused, in whole or in part, by Trek.

7.      Trek's claims are barred based on Trek's prior breach of the Sublicense Agreement.

8.      Trek's claims are barred by the doctrine of unclean hands.

9.      Trek's claim for relief fails for failure to mitigate damages.

10.     Venue is improper due to the earlier commenced action presently before the United States District Court for the District of Minnesota.

Wherefore LeMond Cycling respectfully requests that the Court:

1.      Dismiss Trek's Counterclaim and Third-Party Complaint with prejudice;

2.      Award LeMond Cycling costs and fees; and

3.     For any additional relief that this Court deems just and equitable.


Dated:  October 20, 2008                    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



                                            By:     s/Denise S. Rahne
                                                  Christopher W. Madel (#230297)
                                                  Denise S. Rahne (#331314)
                                                  Jennifer M. Robbins (#387745)

                                            2800 LaSalle Plaza
                                            800 LaSalle Avenue
                                            Minneapolis, MN 55402-2015
                                            Telephone: 612-349-8500
                                            Facsimile:  612-339-4181

                                            ATTORNEYS FOR PLAINTIFF
                                            LEMOND CYCLING, INC.

80380615.1