# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| LeMond Cycling, Inc., | |
|     Plaintiff, | Civil No. 08-1010 (RHK-JSM) |
| v. | Judge Richard H. Kyle |
| | Magistrate Judge Janie S. Mayeron |
| Trek Bicycle Corporation, | |
| | Date: January 15, 2008 |
|     Defendant/Third-Party Plaintiff, | Time: 1:00 p.m. |
| | Judge: Janie S. Mayeron |
| v. | |
| Greg Lemond, | |
|     Third-Party Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO ITS FIRST SET OF DISCOVERY REQUESTS**

Plaintiff, LeMond Cycling, Inc. ("Plaintiff"), moves to compel Defendant/Third-Party Plaintiff, Trek Bicycle Corporation ("Trek"), to produce documents responsive to Plaintiff's First Set of Document Requests and to answer Plaintiff's Interrogatory No. 8. Working from a mistaken interpretation of the Federal Rules, Trek has refused to comply with six requests. Additionally, Trek has failed to properly follow the Federal Rules with regard to asserting attorney-client privilege in its use of patently insufficient privilege and redaction logs.

On multiple occasions, Plaintiff brought these deficiencies to Trek's attention via written correspondence and has waited for any indication that

80482796.1

compliance would follow. Until the filing of this motion, Trek did not respond substantively to the requests that are the subject of this motion and Trek's subsequent response confirms that it will not be providing information and documents responsive to the requests. Deposition scheduling is currently underway and Plaintiff cannot properly designate deponents and prepare for depositions without Trek's complete responses. In the interest of moving discovery forward on a timely basis, Plaintiff respectfully requests that this Court compel Trek's responses to Plaintiff's First Set of Discovery Requests and compel Trek to produce complete redaction and privilege logs in accordance with the Federal Rules.

## BACKGROUND

LeMond Cycling is the namesake of cycling champion Greg LeMond, whose high-quality product, success as a professional cyclist, and principled stance against doping in professional cycling have earned him a following among cycling fans and consumers. Mr. LeMond licensed his name and image to LeMond Cycling, which serves as his licensing company with the power to sublicense for various products and services under the LeMond name and trademarks.

Trek manufactures and sells bicycles and accessories in the United States and internationally. On June 29, 1995, LeMond Cycling and Trek entered into a "Sublicense Agreement" which was amended in August, 1999. The Agreement and Amendment allowed Trek to use the name and trademark "Greg LeMond

2
80482796.1

Cycles" and other similar trademarks incorporating the name "Greg LeMond" on which the parties would mutually agree. The Agreement and Amendment require Mr. LeMond to be available for promotional services of LeMond-branded products, and require Trek to use its best efforts in the promotion and marketing of LeMond-branded products in the United States and internationally.

Despite the fact that Mr. LeMond has been consistent in his public statements against doping in sports since before Trek entered into the 1999 Amendment with LeMond Cycling, it was at that point in the parties' relationship that Trek began complaining that such statements by Mr. LeMond resulted in a breach of the Agreement. Trek raised these claims in part because of comments Mr. LeMond made related to Lance Armstrong, with whom Trek has an Endorsement and Spokesperson Agreement, and whose image Trek claims to be of "substantial commercial value" as a spokesperson for Trek. (*See* August 10, 2004 letter from Brown to LeMond (Declaration of Jennifer M. Robbins ("Robbins Decl."), Ex. 1).)

The parties' relationship has been difficult in recent years, stemming in large part from the influence Lance Armstrong has exerted on Trek with regard to its relationship with LeMond Cycling and its namesake, Greg LeMond. (*See* August 13, 2001 authenticated transcript (Robbins Decl., Ex. 2), at 2-3.[1]) In 2004,

---

[1] Under the Protective Order in effect in this case, Plaintiff may file this excerpt of the authenticated transcript, as the "Protective Order has no effect upon, and shall not apply to, the use or disclosure by any party . . . of its own information,

3

80482796.1

in fact, Trek sent LeMond Cycling a notice of breach related to Mr. LeMond's public statements of concern about doping in professional cycling. (*See* Trek's notice of breach (Robbins Decl. Ex. 1).) In response, LeMond Cycling served but did not file a declaratory judgment action in order to protect itself from these unfounded accusations. In 2005, the parties reached a standstill as to the dispute, Trek withdrew its notice of breach, and LeMond Cycling attempted to continue its relationship with Trek. As is set forth in the Complaint, however, after 2005 Plaintiff observed a notable deterioration in the treatment of its brand. After investigating, LeMond Cycling filed the present lawsuit. In response, and based in part on the same argument on which its 2004 notice of breach was based, Trek counterclaimed seeking both equitable relief and money damages.

In an attempt to prosecute its case, and defend against Trek's allegations, Plaintiff served Trek with discovery related to Trek's marketing and promotion of the LeMond brand, communications between Trek, LeMond, Lance Armstrong and consumers, and any Agreements with Armstrong, which Trek has touted as a financial asset not only to Trek but also to LeMond Cycling. For the reasons discussed below, Trek's responses to such discovery have been deficient.

**ARGUMENT**

Trek has failed to produce documents in response to Plaintiff's First Set of Document Requests Nos. 3, 11, 23, 24, and to answer Plaintiff's Interrogatory No.

---

documents, items, ideas, or materials for any purpose." (Stipulated Protective Order (Doc. 47), entered Oct. 6, 2008.)

8. Additionally, even after Plaintiff's letter to Trek indicating that further documents should have been produced relevant to Document Request No. 16, Trek still failed to produce all relevant documents. (*See* November 14, 2008 letter from Rahne to Weber (Robbins Decl., Ex. 3).) Finally, Trek completely refused to respond to Interrogatory No. 8 and Document Request No. 23 on the basis of relevance, stating that the requests are "not reasonably calculated to lead to the discovery of admissible evidence." (*See* Trek's Response to LeMond Cycling's First Set of Discovery Requests (Robbins Decl., Ex. 4), at 8, 15.) Contrary to Trek's assertions, however, these requests are directly relevant to Trek's allegations.

## I. TREK'S RESPONSES TO PLAINTIFF'S REQUESTS ARE INADEQUATE UNDER THE FEDERAL RULES.

The Federal Rules authorize discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "[T]he Court must view the [discovery] request in light of the broad, liberal construction generally given to the discovery rules." *Liberty Auto Glass, Inc. v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 06-4491 (JRT/FLN), 2008 WL 169823, at *2 (D. Minn. Jan. 16, 2008) (attached at Robbins Decl. Ex. 5) (citing *Edgar v. Finley*, 312 F.2d 533, 535 (8th Cir. 1963)). Relevance is particularly broad, "and a court must consider a discovery request relevant unless it is clear that the information sought has no bearing upon the subject matter of the action."

5
80482796.1

*Id.* (citing *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992)).

A. **Trek Should Respond to Requests Related to Its Agreements with Lance Armstrong Because They are Relevant to Trek's Counterclaim and Third-Party Complaint.**

**Interrogatory No. 8**:
For each agreement between Armstrong and Trek:
   a.   describe the agreement;
   b.   identify each person with knowledge of the agreement; and for each such person, describe their knowledge; and
   c.   identify each document relating to the agreement.

**Response**:
   The requests are objectionable as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 23**:
   All documents constituting or containing any agreements with Armstrong, including but not limited to any endorsement and spokesperson agreement, including all drafts, versions, and documents related to the negotiation and drafting of such agreement(s).

**Response**:
   This request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

In light of the larger context of this dispute and where Trek has openly claimed that its "Endorsement and Spokesperson Agreement with Lance Armstrong is one of its other valuable business interests, Mr. Armstrong's name, good public image and endorsement of Trek products are of substantial commercial value to Trek," Trek cannot support its blanket refusal to produce documents related to its agreements with Lance Armstrong in response to

6

Interrogatory No. 8 and Document Request No. 23. (*See, e.g.,* August 10, 2004 letter from Brown to LeMond (Robbins Decl. Ex. 1).) Additionally, Trek alleges that its "unique association" with Armstrong led to an increase in sales for all of Trek's products. (*See* Trek's Counterclaim and Third-Party Complaint (Doc. 44), at ¶ 14.) Documents related to Trek's association with Lance Armstrong, including any Endorsement and Spokesperson Agreements are therefore relevant to Trek's damages claims and must be produced.

> **B.  Trek Should Produce All Documents Relevant to Trek's Marketing, Promotion, and Advertising of LeMond-Branded Products.**
>
> **Request No. 3**:
> Since January 1, 1995, all documents relating to Trek's efforts to market, promote, and advertise products bearing LeMond's name in any territory outside of the United States, including but not limited to the countries Trek designated and set forth in Exhibit 1.02 of the June 29, 1995 Sublicense Agreement between the LeMond Cycling and Trek.
>
> **Response**:
> The request for all documents "relating to" Trek's efforts is vague and overbroad. Subject to and limited by the objections, responsive documents located to date will be made available for inspection and copying.
>
> **Request No. 11:**
> All documents relating to Trek's plans to promote and maintain the LeMond brand until the expiration of the Agreement on September 30, 2010.
>
> **Response:**
> As the request seeks current plans, none. See Trek's pleadings.

7

80482796.1

Trek does not dispute the relevance of these request and expressly agreed to produce all responsive documents. Still, although Trek has produced some documents related to marketing, promotion, and advertising of the LeMond brand, such as what appear to be internal PowerPoint presentations and copies of event fliers, there is a noticeable lack of internal communication regarding marketing plans. In a time when communication is commonly conducted through the use of electronic mail, the lack of production of any internal emails related to Trek's marketing and promotion plans is suspect.

Furthermore, Trek's response to Request No. 11 is especially frustrating given that the Request is not limited to "current" plans, as intimated by Trek. The request clearly seeks *any* documents related to Trek's plans to promote and maintain the LeMond brand until the Agreement's expiration of September 30, 2010, regardless of when such plans were made. In fact, because of Trek's previous failure to adequately promote and market the LeMond brand, Plaintiff negotiated inclusion of explicit international minimums. With the relationship between Plaintiff and Trek standing at more than 13 years, and especially with contract negotiations specific to promotion and marketing of the LeMond brand, it is logical to expect production of documents responsive to this request.

Trek's meet and confer correspondence on this point is telling – Trek claims that it "produced materials documenting its plans to promote and maintain the LeMond brand to September 30, 2010." (*See* December 19, 2008 letter from Weber to Rahne (Robbins Decl., Ex. 7).) Notably, Trek has recently and

8

unilaterally ceased carrying the LeMond brand in the last few weeks, despite there being no resolution from this Court as to Trek's request to terminate the agreement. There was obviously planning related to the decision to NOT promote the brand any longer, none of which is evidenced in Trek's production. Moreover, it is Plaintiff's belief that this planning began well before it filed the present suit, and Plaintiff is entitled to any such documents.

>   **C.   Trek Should Produce All Documents Relating to Communications to or from Customers, LeMond, or Trek Regarding Armstrong, LeMond, or LeMond-Branded Products.**

**Request No. 16:**
All documents constituting or containing customer comments, positive or negative, relating to LeMond or LeMond Cycling.

**Response:**
Responsive documents located to date will be made available for inspection and copying.

**Request No. 24:**
Documents sufficient to show any telephone call made to or received from Armstrong relating to Trek, including the telephone calls that included Burke on August 13, 2001.

**Response:**
See Response to Request 13. ["The request for all documents "relating to" any communication is vague and overbroad. Subject to and limited by the objections, responsive documents located to date will be made available for inspection and copying."]

Again, Trek does not dispute the relevance of these requests and expressly agreed to produce all responsive documents. Yet, Plaintiff does not believe that it has received all responsive documents. For instance, even though Plaintiff has produced documents related to Trek's insistence that Mr. LeMond issue a press

9

release in August, 2001, Trek has failed to produce all correspondence between either John Burke (Trek's President), Mr. LeMond, or Bill Stapleton (who by Mr. Burke's own admission, assisted in drafting the press release).

Other communications that are missing from Trek's production are those from customers commenting on either Mr. LeMond or Mr. Armstrong. Trek has produced numerous negative comments regarding Mr. LeMond, but Plaintiff has reason to believe that Trek has still failed to produce all responsive documents in which *positive* comments are made about Mr. LeMond.[2]

## II. TREK SHOULD PRODUCE REDACTION AND PRIVILEGE LOGS IN COMPLIANCE WITH THE FEDERAL RULES.

The Federal Rules require that a party claiming privilege make the claim "in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). In contrast to the requirements of the Federal Rules, Trek has produced inadequate redaction and privilege logs that do not enable Plaintiff to assess Trek's privilege claims.[3] *See* Fed. R. Civ. P. 26(b)(5). While the attorney-client privilege serves the public interest by encouraging honest communication between attorneys and clients, it runs contrary to the search for truth and should be applied only when it is needed to encourage frank communication between clients and their attorneys. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 402 n. 8 (1976). It is the burden of the

---

[2] For example, Trek only produced the document attached to Robbins Declaration at Exhibit 10 in response to Plaintiff's threats to file the present Motion.
[3] Additionally, Plaintiff is still awaiting redaction logs pertaining to Trek's December 9, 2008 and December 23, 2008 document productions.

party asserting attorney-client privilege or protection under the work product doctrine "to provide a factual basis for the privilege or protection." *Isensee v. HO Sports Co.*, Civil No. 06-210 ADM/AJB, 2007 WL 1118274, at *2 (D. Minn. Apr. 13, 2007) (attached at Robbins Decl. Ex. 6) (citing *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985); *In re Grand Jury Proceedings*, 655 F.2d 882, 886-87 (8th Cir. 1981)). When the party provides a privilege log "the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of attorney-client privilege . . . have been established." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 475 (E.D. Pa. 2005).

Trek has failed to establish attorney-client privilege through the use of its inadequate privilege and redaction logs. Although Trek has provided the date, author, and recipients of the communications, nearly every description on Trek's privilege log reads "Confidential Attorney – Client communication for the purpose of rendering legal advice regarding LeMond." (*See* Trek Bicycle Corp.'s Privilege Log (Robbins Decl. Ex. 8).) Trek's redaction log provides even less information with each entry reading "Confidential Attorney – Client communication for the purpose of rendering legal advice." (*See* Trek Bicycle Corp.'s Redaction Log (Robbins Decl. Ex. 9).)[4] Trek's conclusory statements render Plaintiff unable to assess Trek's claims of Privilege.

---

[4] Plaintiff has reason to believe that upon receipt of proper descriptions, appropriate challenges to Trek's privilege claims may be made. For example,
11
80482796.1

**CONCLUSION**

Trek's deficient responses to Plaintiff's discovery requests run contrary not only to the broad interpretation of relevance in the discovery area but also to logical expectations as to the existence of further documents such as internal email communications and customer comments. Furthermore, Trek's inadequate privilege and redaction log descriptions leave Plaintiff unable to assess Trek's privilege claims and determine whether to assert any challenges to such claims. For these reasons, Plaintiff respectfully requests that the Court compel Trek to respond to Plaintiff's discovery requests and amend its privilege and redaction logs in compliance with the Federal Rules.

Dated:  December 31, 2008     **ROBINS, KAPLAN, MILLER & CIRESI L.L.P**


By:  *s/Denise S. Rahne*
 Christopher W. Madel (#230297)
 Denise S. Rahne (#331314)
 Jennifer M. Robbins (#387745)

---

Trek claims privilege over TREK000102 from Bob Burns to "**Consumer**, LeMond" and describes it as "Confidential Attorney – Client communication for the purpose of rendering legal advice." (*See* Trek Redaction Log (Robbins Decl. Ex. 9) (emphasis added).)  Similarly, Trek makes multiple claims of privilege while providing the following description:  "Confidential Client designation of Attorney recipients of documents."  (*Id.* at, TREK000546, TREK000780-81, TREK000783.)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

ATTORNEYS FOR PLAINTIFF LEMOND
CYCLING, INC. AND THIRD-PARTY
DEFENDANT GREG LEMOND