## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LeMond Cycling, Inc., | |
| Plaintiff, | Civil No. 08-1010 (RHK-JSM) |
| v. | Judge Richard H. Kyle |
| | Magistrate Judge Janie S. Mayeron |
| Trek Bicycle Corporation, | |
| | Date: January 15, 2008 |
| Defendant/Third-Party Plaintiff, | Time: 1:00 p.m. |
| | Judge: Janie S. Mayeron |
| v. | |
| Greg Lemond, | |
| Third-Party Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO TREK'S MOTION TO COMPEL RESPONSES TO ITS FIRST SET OF WRITTEN DISCOVERY TO LEMOND CYCLING, INC.

### BACKGROUND

Plaintiff LeMond Cycling, Inc. ("LeMond Cycling") brought the present lawsuit against Defendant Trek Bicycle Corporation ("Trek") for breach of the parties' sublicense agreement ("the Agreement"). It is LeMond Cycling's contention that Trek, in retaliation for public anti-doping statements made by LeMond Cycling's namesake Greg LeMond and with the involvement of another Trek business partner, unilaterally ceased to promote LeMond Cycling's brand in violation of the best efforts clause explicitly set forth in the Agreement. Trek's

80519506.1

retaliation continued when, on April 20, 2008, instead of responding to LeMond Cycling's complaint, it held a media event at its headquarters announcing its own lawsuit – a declaratory judgment action that did not seek damages. Trek's suit was brought in the Western District of Wisconsin, and its announcement included a derogatory power point presentation and question and answer session that was a thinly veiled effort to assassinate the character of Mr. LeMond. (*See* Declaration of Jennifer M. Robbins ("Robbins Decl.") Ex. 1.) A video tape of this announcement was immediately posted on YouTube by someone with the identifier "trekbikesusa."

After a failed attempt to transfer LeMond Cycling's lawsuit to Wisconsin, both actions were consolidated before this Court. Trek then amended its complaint, which had not sought damages, to include: (1) a claim for breach of contract based on purported losses for bikes that Mr. LeMond purchased through his long-standing ability to purchase bikes for himself and others at employee pricing; and (2) a breach of the duty of good faith and fair dealing for damage that it claims Mr. LeMond did to his brand and to Trek. Trek also chose to amend to sue Mr. LeMond personally. The question of how LeMond Cycling or Mr. LeMond accomplished this purported damage is difficult to pin to any term in the Agreement. The bike purchase claim is loosely tied to a clause making Trek the exclusive licensee of LeMond-branded bikes, although Trek does not seem to argue that LeMond Cycling improperly licensed anything, instead complaining that it should have made more money on the bikes it knowingly sold at employee

discount prices.[1] The general damage claim is all the more loosely tied to a boilerplate moral-turpitude clause in the Agreement, and the purported explanation for how Mr. LeMond has damaged his brand conveniently tracks the derogatory power point presentation that Trek made to the media.

The parties are presently in discovery, which closes on June 8, 2009. LeMond Cycling served discovery on Trek on August 19, 2008. On December 18, 2008, focusing on two areas of discovery that were holding up its effort to proceed with significant depositions and other related discovery in sufficient time to meet the discovery deadline, LeMond Cycling brought a motion to compel responses to five document requests and one interrogatory, as well as an appropriate privilege log. At 3:38 p.m. the next day, Friday December 19, Trek sent LeMond Cycling a letter outlining 25 purported deficiencies in LeMond Cycling's discovery responses and requesting a meet and confer the following Monday. (*See* Weber letter to Rahne, at Robbins Decl. Ex. 3.) While a meet and confer on 25 issues on the Monday following a Friday afternoon letter was unrealistic, LeMond Cycling provided two responses which in part indicated the need to review the purported testimony — which it had not yet received — underlying some of the requests before it could respond accurately.[2] (*See* Rahne letter to Weber, at Robbins Decl. Ex. 4.) At Trek's request, on December 23, 2008, LeMond Cycling agreed to

---

[1] An example of the transactions about which Trek now complains is attached to the Declaration of Jennifer Robbins at Exhibit 2.

[2] The referenced testimony was from Mr. LeMond's deposition, which took place on December 15, 2008 and for which the transcript was not available at the time LeMond Cycling responded to Trek's letter.

3

move the hearing date for the present motion so that Trek's counsel could appear in person. Rather than provide any response to LeMond Cycling's December 23, 2008 letter, on January 5, 2009 Trek filed its motion to compel with the same hearing date as the one Plaintiff changed to accommodate Trek's scheduling request.

## ARGUMENT

### I. TREK'S MOTION IS PREMATURE.

Trek filed this motion based on a rushed deficiency letter regarding 25 issues sent on a Friday afternoon. To the degree that it could, LeMond Cycling responded within two business days. While Trek's rushed correspondence and quantity-over-quality approach to its motion are undeniably premature and tailored to leverage its position as to Plaintiff's motion, Plaintiff elects to take this as an opportunity to clarify as many issues as possible such that the parties can proceed under the present discovery schedule and move matters along.

On December 29, 2008, LeMond Cycling received the transcript of Mr. LeMond's deposition, which was the basis for many of Trek's eleventh hour complaints. LeMond Cycling has reviewed the deposition. On some matters Plaintiff's position remains the same, and on some matters Trek's complaints are moot. LeMond Cycling has or will provide responses to requests related to LeMond Cycling's activities in cycling-related businesses. This includes, to the degree they are available, the following categories of documents: contracts related to LeMond Cycling or Greg LeMond's cycling business; communications with

4

Trek relevant to the present lawsuit; Trek, LeMond Cycling, and Greg LeMond's performances of their duties under the Sublicense Agreement; records regarding bicycles purchased from Trek by Greg LeMond, LeMond Cycling, or their representatives; Mr. LeMond's statements about Lance Armstrong; and, tax returns and financial statements of LeMond Cycling, Inc.

## II. PLAINTIFF WILL PROVIDE ALL DOCUMENTS WITHIN A REASONABLE ZONE OF RELEVANCE. (Interrogatory Nos. 1-3; Doc. Req. Nos. 1-3, 6, 7, 13, 18, 26)

Plaintiff has provided and is willing to meet ongoing discovery obligations regarding business activities that have a logical relationship to the contract — *i.e.* activities related to the cycling industry. Despite the fact that it is the contract that defines the parties' legal obligations to one another, Trek contends, without bounds, that "all of Greg LeMond's and LeMond Cycling's businesses are relevant." (Trek Br. (Doc. No. 63), at 8.) This contention is baseless and only calculated to provide unnecessary burden and harassment.

### A. The Relationship between the Parties is Defined by the Agreement.

The Agreement that is the basis for this lawsuit is between Trek and LeMond Cycling to sublicense the LeMond brand for use on bicycles. (*See* Sublicense Agreement at Robbins Decl. Ex. 5, at LCI 03595.) Mr. LeMond personally undertook to perform the services in the contract, defined as promotional services and assistance with design and development. (*Id.*, at LCI 03597 at ¶¶ 2.02.01, 2.02.02; LCI 03617). While Trek has made other threats in the past in response to Mr. LeMond's comments as to his concern about doping in

5

professional cycling, Trek has never before claimed that either LeMond Cycling or Mr. LeMond has failed perform these services in good faith. To the contrary, it is one of LeMond Cycling's contentions that Trek blocked Mr. LeMond's efforts to attend various events where he believed he could be helpful in supporting the LeMond brand. (Compl., at ¶ 45.)

Trek's motivation for the present action is one that first emerged in 2001 when Trek, at the behest of Lance Armstrong, responded to public statements made by Mr. LeMond regarding his concerns about doping in professional cycling by extorting a press statement drafted by Mr. Armstrong and his attorneys. (*See* Aug. 13, 2001 authenticated transcript at Robbins Decl. Ex. 6.) Since that incident, Trek has attempted to use the Agreement to keep Mr. LeMond from speaking on the topic. In 2004, for example, Trek referenced the moral-turpitude clause in the Agreement to threaten a lawsuit related to Mr. LeMond's statements of concern. (*See* Brown letter to LeMond at Robbins Decl. Ex. 7.) The moral-turpitude clause in the Agreement states that Trek may terminate the Agreement if Greg LeMond "takes any action which damages or has an adverse impact upon Trek or Trek's business or goodwill, or if LeMond is convicted of a felony involving moral turpitude or gross dishonesty." (Sublicense Agreement at Robbins Decl. Ex. 5, at LCI 03606 ¶ 13.02.01.)

The motives have not changed, the effort has only broadened. Because there is no "action" that has been committed by LeMond Cycling or Mr. LeMond that is in breach of this clause, Trek now furthers the effort it began with its press

6

conference/power point presentation. Trek does so under the guise of a supposed violation of the moral-turpitude clause through its veiled attempt to disparage Mr. LeMond with mischaracterizations about his "conduct as a businessperson." (Trek Br. (Doc. No. 63), at 8.) As evidenced by the Agreement itself, however, the moral-turpitude clause is not an invitation for Trek to explore Mr. LeMond's business decisions in endeavors that are wholly unrelated to the Agreement. Over previous decades, Mr. LeMond has been involved in a variety of businesses, ranging from the restaurant industry to real estate. Trek's exploration of the numerous irrelevant businesses of Mr. LeMond cannot lead to evidence of any "action" that has damaged Trek. Such a discovery expedition is particularly illogical in the present case where, if there has been purported damage by some action, Trek ought to know of it at this time. Furthermore, reasonable minds can agree about what makes good and bad business judgments. Even specific to the arena of cycling, which is the only possible business of relevance, Mr. LeMond does as well as some of Trek's other business partners based on consumer feedback. (*See, e.g.*, Higgins email to Trek at Robbins Decl. Ex. 8.)

### B. Trek's Requests are So Overbroad as to Constitute a Harassing Fishing-Expedition.

Trek has requested documents related to ***all businesses*** that Greg LeMond or LeMond Cycling has had an ownership interest in, employees or agents of such businesses, and financial statements of all such businesses. In its brief it argues that it is entitled to explore all of these businesses and business relationships in

7

order to show Mr. LeMond's "conduct as a businessperson" and "treatment of his business colleagues." (Trek Br. (Doc. No. 63), at 8.) As stated, this request includes Mr. LeMond's relationship with his grounds keeper, his real estate holdings, and financial information from unrelated businesses. It is blatantly overbroad in the context of Trek's need to show an "action" that has caused Trek damage and can only be calculated to increase the costs and burden of this litigation and to further retaliate against Mr. LeMond for his statements that, though unrelated to any contractual obligations, bother Trek and its business partner Lance Armstrong.

### C. The Appropriate Bounds for Relevance of Mr. LeMond's Past Business Endeavors are Those Businesses that are Cycling-Related.

Because this lawsuit is about whether the Sublicense Agreement between the parties has been breached, Trek's persistent request for documents related to *all* businesses, is overbroad.[3] Although Plaintiff believes that requests regarding Plaintiff's business relationships with any entity other than Trek are irrelevant to Trek's ability to show that any "action" has damaged it, Plaintiff has agreed to provide information involving cycling-related businesses such as: LeMond Cycling or Greg LeMond's contracts; communications with Trek relevant to the present lawsuit; Trek, LeMond Cycling, and Greg LeMond's performances of

---

[3] Trek's attempts to gain information through overly broad discovery requests includes the three third-party subpoenas served at the end of December. Plaintiff has filed motions to quash the subpoenas on the issue of relevance, one of which was filed in this Court, and is also moving for a protective order in this Court this week. These subpoenas seek, for example, information related to a business that Trek knows to be not Mr. LeMond's but his son's.

8

their duties under the Sublicense Agreement; records regarding bicycles purchased from Trek by Greg LeMond, LeMond Cycling, or their representatives; Mr. LeMond's statements about Lance Armstrong; and, tax returns and financial statements of LeMond Cycling, Inc.

Despite Plaintiff's compromise, Trek persists in its baseless pursuit of Mr. LeMond's personal tax returns and the same from his other business enterprises. The personal tax returns of Mr. and Mrs. LeMond and the tax returns for the other business entities requested by Trek are irrelevant to this lawsuit since they do not relate to whether Mr. LeMond or Trek breached the Sublicense Agreement. As noted by this Court, "federal courts generally resist discovery of tax returns." *EEOC v. Ceridian Corp.*, Civil No. 07-4086 (DSD/JJG), 2008 U.S. Dist. LEXIS 90392, at *3 (D. Minn. Sept. 16, 2008) (attached at Robbins Decl. Ex. 9); *see also St. Croix Printing Equip., Inc. v. Sexton*, Civil No. 06-4273 (PAM/JSM), 2008 U.S. Dist. LEXIS 81918, at *15-16 (D. Minn. July 18, 2008) (denying motion to compel tax returns where profit/loss statements had been produced) (attached at Robbins Decl. Ex. 10).

### III. PLAINTIFF DOES NOT OBJECT TO PRODUCTION OF NON-PRIVILEGED RECORDINGS AND IDENTIFICATION OF LAWSUITS. (Interrogatory Nos. 4, 5; Doc. Req. Nos. 15, 16)

Consistent with its objections, LeMond Cycling does not object to the production of a copy of each non-privileged recording relevant to the lawsuit that it can locate. Relying on obvious hyperbole by an emotional deponent, Trek somehow implies that recordings have been located that it has not been provided.

9

(Trek Br. (Doc. No. 63), at 12-13.) Plaintiff has searched diligently for all existing records of such conversations and has provided or accounted on its privilege log for each recording that is has been able to locate.[4] Plaintiff also does not object to providing an explanation for what it believes happened to recordings that no longer exist. In fact, as is clear from Mr. LeMond's testimony, Mrs. LeMond is the individual with information as to the tapes—Trek has yet to depose Mrs. LeMond. (*See* Supp. Weber Decl. Ex. 10, at 225:8-11 (Doc. No. 74-2).)

Similarly, Plaintiff does not object to supplementing, if necessary, its identification of any other lawsuits it may have inadvertently failed to identify.[5] Plaintiff also does not object to supplementing Interrogatories No. 6 and No. 7 where and when necessary. In fact, in light of Trek's recent unilateral decision to no longer pay royalties on the Agreement, which does not expire until September 30, 2010, there will likely be additional efforts to establish business relationships. (*See* Weber letter to Bluming at Robbins Decl. Ex. 11; Bluming letter to Weber at Robbins Decl. Ex. 12.)

---

[4] The recording with Ms. Andreu was done at the request of Mr. LeMond's counsel to explore whether Ms. Andreu was willing to testify in an legal action that might occur related to the dispute involving Trek, Lance Armstrong, and Mr. LeMond. Mr. LeMond's counsel in fact participates in part of the call to confirm the content of the discussion.

[5] Consistent with Plaintiff's position on Trek's other discovery requests, Plaintiff has identified all cycling-related lawsuits, has been over inclusive in its effort, and does not understand Defendant's concern regarding its response.

## IV. TREK'S COMPLAINT REGARDING INTERROGATORY NO. 8 ARE MOOT.

Trek requests the identification of Mr. LeMond's internet service provider ("ISP"), URL addresses, email addresses or domain names. Because an ISP such as Comcast provides only internet access, identities of Mr. LeMond's ISPs are irrelevant. For example, Trek contends that URL addresses and ISPs are relevant because Mr. LeMond testified that his e-mail account was hacked into. However, the e-mail account referenced in Trek's brief at page 16 is a Yahoo! account. After discovering that their e-mail account had been compromised, Mr. and Mrs. LeMond made appropriate reports to the Medina police. In an ongoing effort to determine the extent to which the e-mail account was compromised, a document preservation letter was sent to Yahoo! on October, 14, 2008. (*See* Rahne letter to Yahoo! legal department at Robbins Decl. Ex. 13.) A subpoena to Yahoo! was then sent on December 31, 2008—on which Trek's counsel was copied—requesting all documents relevant to Yahoo!'s investigation of the matter. Plaintiff will supplement its discovery responses if any information relevant to the present litigation comes to light.

## CONCLUSION

It is apparent that Trek filed the present motion as a rushed response to LeMond Cycling's Motion to Compel responses to six discovery requests to Trek. Plaintiff has agreed to provide responses to Trek's requests related to LeMond Cycling and Greg LeMond's cycling-related businesses. Plaintiff, however, will

11

not sit idly by while Trek attempts to delve into private information related to every business Mr. LeMond has been involved with over the past decades. For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order denying Trek's Motion to Compel and setting reasonable boundaries for the scope of future discovery.

Dated: January 8, 2009 **ROBINS, KAPLAN, MILLER & CIRESI L.L.P**

By: *s/Denise S. Rahne*
Christopher W. Madel (#230297)
Denise S. Rahne (#331314)
Jennifer M. Robbins (#387745)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
Facsimile: 612-339-4181

ATTORNEYS FOR PLAINTIFF LEMOND CYCLING, INC. AND THIRD-PARTY DEFENDANT GREG LEMOND