# ZASTROW EXHIBIT 4

ZASTROW EXHIBIT 4

```
 1                UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MINNESOTA
     -----------------------------------------------------------
 3
     LeMOND CYCLING, INC.,
 4
                  Plaintiff,
 5
                  vs.              Case No. 08-1010
 6
     TREK BICYCLE CORPORATION,
 7
                  Defendant/Third-Party
 8                Plaintiff,

 9                vs.

10   GREG LeMOND,

11                Third-Party Defendant.

12   -----------------------------------------------------------

13

14

15          Video Deposition of ELISABETH HUBER

16             Monday, January 5th, 2009

17
                       9:33 a.m.
18
                          at
19
                  GASS WEBER MULLINS, LLC
20            309 North Water Street, Suite 700
                  Milwaukee, Wisconsin  53202
21

22
            Reported by Julie K. Lyle, RPR/RMR/CRR
23

24

25
```

```
 1   Q   But even backing up a step, it's available to
 2       Trek employees --
 3   A   Current Trek employees.
 4   Q   -- for personal use?
 5   A   Uhm-uhm.
 6   Q   In practice, is it used by nonemployees?
 7   A   No.
 8   Q   What was the rationale for Greg LeMond's use of
 9       the employee pricing?  Was he considered an
10       employee?
11   A   Pricingwise, yes.  But for him, he was considered
12       somebody to be a prominent cycling figure and
13       that he had contacts in the media, and he was
14       allowed to go beyond the normal employee
15       limitations because he wanted to get out and sell
16       his bike line.  And we also wanted to keep him
17       and his family on the most current year product.
18   Q   Is there anybody else, to your knowledge, at Trek
19       who had that right?
20   A   I have no knowledge since I've not worked with
21       anybody else except Greg LeMond.
22   Q   So you don't know if other prominent cyclists
23       with whom Trek has a relationship, for example,
24       Gary Fisher, if he has the ability to avail
25       himself of employee pricing?
```

```
 1  Q    And can you tell me, when you read his
 2       deposition, having worked with him over a number
 3       of years, was what you saw him talk about, was it
 4       consistent or inconsistent with your
 5       understanding of -- of his rights under the
 6       employee purchase program?
 7            MS. RAHNE:  Object to the form.  That's
 8       vague as to what you're referencing.
 9            MR. WEBER:  You can answer.
10            MS. RAHNE:  You can totally answer.
11            THE WITNESS:  Okay.  I felt it was
12       inconsistent.
13  BY MR. WEBER:
14  Q    And why is that?
15  A    Because going back and looking also at the
16       e-mails that were provided by his counsel, and
17       what he was using this for wasn't what I thought
18       it was for and what I thought it should be for.
19       And that my understanding of this purchase
20       program was to further his bike line, and I
21       didn't feel that it did that in any way, shape,
22       or form.
23            MR. WEBER:  That's all I have.  Thank
24       you.
25            THE WITNESS:  Thank you.
```