## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| LEMOND CYCLING, INC., | |
| Plaintiff, | Case No. 08-CV-1010 (RHK-JSM) |
| v. | |
| TREK BICYCLE CORPORATION, | **Trek's Response To LeMond Cycling, Inc. and Greg LeMond's "Objections to Trek's Evidence"** |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| GREG LEMOND, | |
| Third-Party Defendant. | |

### Introduction

Trek took great care to establish the foundation for its evidence on summary judgment. (*See e.g.*, Authenticating Affidavits of Charles Schumacher (Docket # 142), Ken Boudreau (Docket # 141). During the November 11, 2009, summary judgment hearing, LeMond Cycling, Inc. and Greg LeMond (collectively "LeMond") submitted additional written argument objecting to certain portions of Trek's evidence on hearsay and speculation grounds. LeMond's objections are curious because the evidence LeMond objects to is ***identical*** to the evidence LeMond presented to the Court in support of his summary judgment submissions.

Dockets.Justia.com

I.      **LeMond cannot object to Trek's summary judgment evidence after
        submitting identical evidence in support of LeMond's claims and
        defenses.**

        For each category of evidence LeMond asks the Court to ignore from Trek's

summary judgment submissions, LeMond elsewhere requested that the Court

consider identical evidence in favor of LeMond's summary judgment submissions.

For example, both Trek and LeMond presented e-mails from consumers sent in

reaction to LeMond's comments to support their summary judgment submissions.

In fact, in support of its summary judgment motion Trek limited the consumer e-

mails it relied on to the exact same subset of e-mails submitted by LeMond in

support of his own motion for summary judgment.  (*See*, Trek's Mem. at pp. 23-24, n.

23, Docket # 187).  Yet LeMond somehow still complains that those e-mails are

inadmissible.  Similarly, LeMond seeks to exclude Trek employee testimony about

dealers concerned that Greg LeMond's public attacks were damaging the brand and

the dealers' businesses.  At the same time, LeMond submits as reliable, trustworthy,

and admissible, alleged statements made by dealers to LeMond concerning the

purported attempt to "wind down" the LeMond line.  The following chart compares

(1) the evidence LeMond seeks to exclude with (2) the evidence LeMond relies on:

| Evidence LeMond Seeks to Exclude | Evidence LeMond Submits as Trustworthy and Reliable | LeMond's MSJ | LeMond's Opp. to Trek MSJ |
|---|---|---|---|
| Consumer e-mails demonstrating adverse public reaction to Greg LeMond's comments.<br><br>Testimony of LeMond dealer Dan Thornton demonstrating the consumer reaction to Greg LeMond's comments and the effect on dealer sales. | The same subset of consumer e-mails Trek submitted which demonstrates the public reaction to Greg LeMond's comments.<br><br>Consumer e-mails relating support for Greg LeMond and consumer e-mail examples used by Trek during the April 2008 media presentation. | pp. 9-10, 21 | p. 11 |

| Evidence LeMond Seeks to Exclude | Evidence LeMond Submits as Trustworthy and Reliable | LeMond's MSJ | LeMond's Opp. to Trek MSJ |
|---|---|---|---|
| Testimony of Trek employees Dan Titus and Dean Gore relating dealer reaction to Greg LeMond's comments and their effect on sales. | Greg LeMond declaration assertions that (1) unnamed dealers told him they wanted to sell LeMond bikes but could not get them from Trek; (2) unnamed dealers told Greg LeMond that Trek informed the dealers the LeMond brand was being discontinued; (3) unnamed dealers told Greg LeMond that LeMond bikes were not discussed during a dealer show presentation and that all bikes had a 3 year lifespan; and (4) unnamed French distributors asked Greg LeMond if they could distribute LeMond bikes. | pp. 11, 15, 17 | pp. 5-8, 12 |
| Testimony of Warren Gibson concerning (1) the reasons LeMond kept the PTI deal secret from Trek, (2) the "Lance Effect," and (3) a Specialized Bicycle employee's statements concerning the effect of Greg LeMond's statements. | (1) Greg LeMond declaration assertion that he was concerned about the impact Lance Armstrong was having on cycling based on information he received from "insiders"; and (2) evidence regarding a "cycling insider's" comments on the effect of Greg LeMond's statements. | pp. 11, 22. | |
| The transcript from the ESPN show, Mike & Mike In The Morning during which Greg LeMond is awarded the "Just Shut Up Award" for his comments concerning Lance Armstrong. | Numerous media reports concerning doping in cycling, Lance Armstrong, and Greg LeMond. | pp. 8-11, 14 | |

As shown above, LeMond attempts to exclude the evidence demonstrating the damage Greg LeMond caused his brand and Trek's business, while at the same time attesting to the admissibility of identical forms of evidence submitted in support of LeMond's claims and defenses. In filing his summary judgment submissions, LeMond was required to "set out facts that would be admissible in evidence." Fed. R. Civ. Pro. 56(e)(1). By setting forth equivalent forms of evidence to Trek's, LeMond has represented to the Court that such evidence is admissible. Whether by estoppel, or through a finding that LeMond's reliance on this evidence conveys sufficient guarantees of trustworthiness under Federal Rule of Evidence 807, LeMond's evidentiary objections should be denied.

II.     **Even if LeMond had not relied on identical evidence, LeMond's objections fail.**

   A.      **None of the evidence LeMond criticizes is inadmissible hearsay.**

LeMond asserts that a wide array of evidence submitted by Trek concerning

the public reaction to Greg LeMond's accusations about specific athletes is

inadmissible hearsay including:

- Consumer e-mails;
- An e-mail from Dan Thornton, an Atlanta based dealer, informing Trek that customers said they would not purchase LeMond bikes;
- Affidavit testimony from Dan Titus, Trek's Midwest Regional Sales Manager, recounting numerous conversations he had with dealers who, as a result of Greg LeMond's comments, purchased fewer LeMond bicycles;
- E-mails to Mr. Titus from dealers voicing their reactions to the comments and relating customer complaints;
- Testimony from Warren Gibson relating a Specialized Bicycle employee's concern over the effect of LeMond's public statements;
- Testimony from Dean Gore, Trek's Director of Product Marketing, concerning conversations he had with dealers about their reactions to Greg LeMond's comments;[1] and
- An ESPN story and poll awarding Greg LeMond the "Just Shut Up" Award.

None of this evidence runs afoul of hearsay rules.

   1.      **The evidence of customer reaction is admissible for non-hearsay purposes.**

Each of the cases LeMond relies on to support his position is inapposite.

None of LeMond's cases addresses the evidence at issue here (nationwide customer

reaction to public statements), and thus merely supports the proposition that out-of-

---

[1] LeMond mischaracterizes Mr. Gore's testimony as a "monologue about a hypothetical dealer and his reactions to Greg LeMond's comments," then argues that such hypothetical testimony is inadmissible speculation.  The Gore testimony is merely a summary of the common reaction Mr. Gore received as a result of Greg LeMond's comments.  This becomes evident after reviewing the start of Mr. Gore's testimony on the topic (Gore Dep. at p. 77) where he explains his direct relationship with a "vast majority" of Trek's dealers and continues on to describe their reactions.

court statements cannot be submitted to prove the truth of the matter asserted, unless subject to a hearsay exception. *American Employer's Ins. Co. v. Roundup Coal Mining Co.*, 73 F.2d 592, 595 (8th Cir. 1934) (letters from customers containing claimed balances owed on each customer's account could not be used to prove the amount due in a theft action); *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (store owner's affidavit that customers had reported debris on the road was inadmissible to prove existence of the debris in personal injury action); *Erickson v. Farmland Indus., Inc.*, 271 F. 3d 718, 728 (8th Cir., 2001) (in age discrimination case, transcripts of telephone calls with customers where customer denied complaining about plaintiff's performance were inadmissible to establish pretextual termination).

In fact, one of the cases LeMond cites, *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 637 (8th Cir. 2007), supports the admissibility of the consumer reaction evidence. In *Ahlberg*, a product liability case, the district court excluded evidence of customer complaints about similar accidents for two reasons: (1) hearsay; and (2) because the accidents reported were not substantially similar to the accident in question. On appeal, the Eighth Circuit upheld the exclusion of the evidence because the other accidents were not substantially similar, but noted that had the accidents been similar, "the customer complaints could have been offered for a non-hearsay purpose – [like] notice" *Id.* at 637, n.3.[2]

---

[2] The other cases LeMond relies on are also inapposite. *Jenkins v. Winter*, 540 F. 3d 742, 748 (8th Cir. 2008) (plaintiff conceded that certain affidavit statements were hearsay); *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 2008 WL 2277602 *1-2 (D. Minn. May 30, 2008 (Kyle, J.) (excluding expert report under Rule 702 when based on speculation); *Murphy v. Mo. Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004) (generally reporting that only admissible evidence will be considered at summary judgment); *Shimozono v. May Dept. Stores Co.*, 2002 WL 34373490, at *13 (C.D. Cal. 2002) (customer service response cards

When, like here, customer communications are offered to demonstrate
(1) customer reaction and (2) the information upon which the recipient [Trek] acted,
courts routinely admit these communications as non-hearsay statements; i.e.
statements not offered to prove the truth of the matter asserted.   *Emich Motors
Corp. v. General Motors Corp.*, 181 F. 2d 70 (7th Cir. 1950) (GM former assistant
manager's testimony that GM received over 200 customer complaints, including 60
written complaints about a dealer was admissible, not to prove the truth of the
statements contained in each complaint, but to demonstrate the basis upon which
GM terminated the dealer), *rev'd on other grounds*, 340 U.S. 558 (1951)); *Armco Inc. v.
Armco Burglar Alarm Co., Inc.*, 693 F. 2d 1155, 1160 n. 10 (5th Cir. 1982) (holding that
evidence of misdirected phone calls and consumer complaints was not offered to
prove the truth of their contents but to show consumer confusion); *Ironclad, L.P. v.
Poly-America, Inc.*, 1999 WL 826946, *6 (N.D. Tex. 1999) (same); *Fun-Damental Too,
Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-1004 (2d Cir. 1997) (same); *U.S. v.
Southern Indiana Gas and Elec. Co.*, 258 F.Supp.2d 884, 889 (S.D.Ind. 2003) (noting that
poll data is not hearsay when admitted to show the attitudes of the respondents and
can also be admitted under 803(3)), *citing, Pittsburgh Press Club v. U.S.*, 579 F.2d 751 (3rd
Cir. 1978).

---

concerning crowding at retail store were not admissible to prove crowding); *Guy v. Crown Equipment
Corp.*, 394 F.3d 320, 329 (5th Cir. 2004) (employee surveys concerning desired design of forklift
inadmissible in a product liability case); *U.S. v. Missouri*, 535 F.3d 844, 852-53 (8th Cir. 2008) (admitting
survey responses to show notice, but not to prove truth of matters asserted therein); *Opuku-Boateng v. State
of Cal.*, 95 F.3d 1461, 1471 (9th Cir. 1996) (testimony regarding poll results was inadmissible to prove the
truth of the matter asserted when no hearsay exception applied).

All of the evidence concerning customer reaction, both the end user reaction and dealer (Trek's customers) reaction, is admissible -- not to demonstrate the truth of the particular matters contained in each separate communication -- but instead to show the large scale outcry against Greg LeMond and the information upon which Trek was forced to act.[3]

### 2. The evidence is also admissible as a statement of the declarants' then existing state of mind.

Even if offered to prove the truth of the matters contained in each communication, the customer reaction evidence is still admissible under the "then existing state of mind" exception to the hearsay rule. Fed. R. Evid. 803(3). *Armco*, 693 F. 2d at 1160 n.10 (misdirected phone calls and complaints demonstrating customer confusion was admissible to prove state of mind); *Fun-Damental*, 111 F. 3d at 1003-1004 (national sales manager's testimony of customer complaints was admissible under state of mind exception to the hearsay rule); *Rainforest Café, Inc. v. Amazon, Inc.*, 86 F. Supp. 2d 886 (D. Minn. 1999) (customer comments concerning consumer confusion with another restaurant were not inadmissible hearsay because they were not offered to prove the truth of the matter asserted and were admissible to show the declarant's then existing state of mind under Rule 803(3)). The consumer e-mails and other customer reaction evidence at issue here are statements of each declarant's state of mind existing at the time of Greg LeMond's public

---

[3]LeMond's assertion that Trek is partaking in a game of "word play" demonstrates LeMond's fundamental misunderstanding of the nature of hearsay. It is axiomatic that if an out-of-court statement is not offered to prove the truth of the contents of the statement itself, then the statement is not hearsay. Fed. R. Evid. 801(c).

accusations.  Thus, under Rule 803(3) they are admissible despite any hearsay qualities they may contain.

### B.  None of the evidence LeMond criticizes is speculative.

In addition to hearsay objections, LeMond also suggests that certain testimony submitted by Trek is speculative.  LeMond's only support for this suggestion is a mischaracterization of the evidence at issue.  None of the evidence is inadmissible speculation.

Dan Thornton, the owner of an Atlanta based bicycle dealership, does not speculate when he testifies that LeMond's remarks hurt his sales of LeMond bikes. Along with the increased complaints about LeMond that Mr. Thornton received, he also witnessed decreased sales of LeMond bikes.  Mr. Thornton, a dealer whose sales were hurt by LeMond's statements, does not need to speculate to recognize the cause and effect relationship under these circumstances.

Likewise, Mr. Titus's and Mr. Gore's testimony concerning the effects of LeMond's statements on the sale of LeMond bikes is not speculation.  Just like Mr. Thornton, these two Trek employees who were both deeply involved with the LeMond brand can draw a line between dealer complaints and lost sales of LeMond bikes without speculating.

Finally, neither of Warren Gibson's comments which LeMond labels speculation is inadmissible.  First, on page 14 of his deposition transcript, LeMond's former agent Mr. Gibson does not testify about Trek's "state of mind."  Instead, Mr. Gibson explained that Greg LeMond instructed him to keep the negotiations

with PTI secret from Trek.  Mr. Gibson then testified that Greg LeMond did not

want Trek to know about the mass market opportunity LeMond was pursuing for

fear that Trek would not agree to terminate the accessories agreement.  Mr. Gibson's

testimony explains LeMond's motives, not Trek's state of mind.

Second, citing page 17 of Mr. Gibson's transcript, LeMond claims that

Mr. Gibson cannot speculate about "supply and demand in the bike market."  The

testimony complained of, however, (per Mr. Gibson's own words) is based on what

he witnessed first-hand through his involvement in the bicycle industry -- road bike

sales increased when Greg LeMond was winning Tours de France in Europe and

when Lance Armstrong was doing the same.  This testimony is not speculative.

## Conclusion

LeMond has admitted the trustworthiness and reliability of the evidence he

seeks to exclude by submitting the same type of evidence in support of his summary

judgment submissions.  Even if LeMond had not attested to admissibility, however,

none of the evidence LeMond objects to is inadmissible hearsay or speculation.  The

Court may consider all of the evidence Trek submitted on the competing motions for

summary judgment.

Dated:  November 20, 2009.

GASS WEBER MULLINS LLC

s/Ralph A. Weber
Ralph A. Weber (WI SBN 1001563)
Paul F. Heaton (WI SBN 1000858)
Christopher P. Dombrowicki (WI SBN 1041764)
309 North Water Street, Suite 700

Milwaukee, WI 53202
Telephone: (414) 223-3300
Fax: (414) 224-6116
weber@gasswebermullins.com
heaton@gasswebermullins.com
dombrowicki@gasswebermullins.com

HALLELAND LEWIS NILAN & JOHNSON, P.A.

Erik T. Salveson (Reg. No. 177969)
Amanda M. Cialkowski (Reg. No. 306514)
Benjamin J. Rolf (Reg. No. 386413)
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 338-1838
Fax: (612) 338-7858
esalveson@halleland.com
acialkowski@halleland.com
brolf@halleland.com

**ATTORNEYS FOR
TREK BICYCLE CORPORATION**